May 17.
Judge Cabell,
delivered the opinion of the court.
*452 This is an action of debt, brought by the appellant, John Richards, against Newman Brockenbrougb, as surviving obligor, in a bond executed on the 21st December, 1809, to the said John Richards, by John H. Beale and the said Newman Brockenbrough, for the performance of an award or umpirage to be made of matters in difference between Beale and Richards.
The condition of the bond required the arbitrators to make their award by the 1st day of January, 1810 ; but, if they could not agree, they were then to choose a third person, whose decision was to be binding on the parties. No time is limited, within which the umpire was to make his umpirage. The condition of the bond concludes with declaring, that the bond is to be void, “ if the above bound John H. Beale and Newman Brockenbrough” shall well and truly stand to the award of the arbitrators, or the umpirage of the umpire.
The arbitrators, not agreeing, chose, on the 29th December, 1809, Thomas Evans as umpire, who, on the 30th day of the same month, rendered an award under his hand and seal. The award, after reciting the arbitration bond, the disagreement of the arbitrators, and their appointment of the umpire, directs, that John H. Beale and Newman Brockenbrough shall pay to John Richards, 146l. 3s. 2d., with interest thereon from the 13th day of Nov. 1807. It farther declares, that Richards is entitled to one half of the crop of corn and shucks made upon the said Beale’s land, cultivated by them; and that Beale is entitled to the other half of the crop of corn and shucks ; but, that Richards shall retain to himself, out of the said Beale’s half of the crop of corn, fifty barrels, one bushel and one peck, for and on account of corn sold and made use of by the said Beale, which was of the said crop, as well as for and on account of certain articles furnished the said Beale for the use of bis family. Newman Brockenbrough having died, the suit was revived against his administrator, Austin Brockenbrough, the appellee.
*453 The declaration recites the condition of the arbitration bond; states the disagreement of the arbitrators; their failure to make any award before the first day of January, 1810; their appointment of the umpire, and the substance of the award as above set forth ; and then assigns as the breach of the condition of the bond, the non-payment of the above sum of 146l 3s. 2d., with interest as aforesaid. To this declaration the defendant pleaded “ nit debet,” with liberty to give in evidence any special matter, which, if pleaded specially, would bar the plaintiff’s action.
The jury, reciting the award in hoec verba, find for the plaintiff the debt in the declaration mentioned, to be discharged by the payment of 146l 3s. 2d., with interest from 13th November, 1807, if, in the opinion of the court, the award be good in law; otherwise, they find for the defendant. The court decided, that the law was for the defendant, and gave judgment accordingly; from which judgment, an appeal was taken to this court.
The objection to this award, mainly relied on by the counsel for the appellee, is, that it was made by the umpire before the expiration of the time within which the arbitrators themselves might, according to the terms of the original submission, have made an award.
We find in the books a vast variety of questions, and much contrariety of opinion, concerning the appointment and duty of umpires. Distinctions are taken between those cases where the umpire is named by the parties, in the submission, and those cases where the appointment is referred to the discretion of the arbitrators; and also, between those cases in which the umpire is directed to make his umpirage within the same period which is limited for the award of the arbitrators, and those in which a farther time is allowed to tiie umpire.
The case, now before us, arises on a submission, by which the appointment of the umpire was referred to the arbitrators, and by which the time limited for the umpirage of the umpire extends beyond that limited for the *454 award of the arbitrators ; and to prevent a confusion of ideas, it may be well to premise that the remarks we may hereafter make, although they may be applicable to other cases also, are to be considered as referring only to cases S,'0W‘nS’ out of such a submission, unless it may be otherwise declared.
It was formerly held, that if arbitrators chose an umpire before the time allowed for their award was expired, such nomination was ipso facto void. So long as this opinion prevailed, it was impossible that any question could be made as to the power of the umpire; for, there could be no umpirage without an umpire. The desire, however, to favour these domestic tribunals, at length induced the courts to support such a nomination, for the purpose of establishing an umpirage made after the time when the arbitrators were to have made their award.(g) This case has been followed by a great many others, confirming the awards of umpires who were appointed before, but did not act till after the time when the arbitrators might have made their award. And such has long been the settled law. In many of the cases alluded to, the judges said, that the umpire could not interfere if ore the time allowed the arbitrators had expired.(h) But, we have not seen any case, in which the point has been directly brought in issue before the English courts. In the absence of decided cases, we must be governed by principles. It becomes, therefore, important, to ascertain the grounds on which the courts have supported umpirages, made after the time allowed to the arbitrators; and, if these grounds are applicable to umpirages made before they also ought to be supported. These grounds have not always been the same. The ground assigned in Watson vs. Clement, Rol. p. 5, and in Mitchel vs. Harris, above referred to, and also, in the case of Daws vs. Moncey, 8 *455 Geo. II,(i) is, that by the nomination of an umpire, the authority of the arbitrators is at an end. And Sergeant Williams, the learned and accurate annotator of Saunders’s Reports, is of the opinion, (j) that that is now the settled law. If this be the true ground of decision, there is certainly as much reason for supporting an umpirage made before, as for supporting one made after the time limited, by the submission, for the arbitrators to make their award. In both cases the power of the arbitrators is at an end. In the last case it expired by efflux of time $ in the first, by the act of the arbitrators themselves. But, in some of the cases, the reason assigned for supporting such an umpirage is, that although the arbitrators might, notwithstanding their nomination of the umpire, have proceeded themselves to make an award; yet, as in fact they made no award within the time, the umpirage shall be good.(k) This reason, also, applies with equal force to umpirages before and after the time allowed to the arbitrators.
We find, also, that where the time within which the umpirage is to he made, is the same with that limited to the arbitrators, if the umpire is appointed by the arbitrators, and makes his umpirage before the expiration of the time, such an umpirage will be supported.(l) We see no reason for supporting an umpirage in such a case that does not apply to that now before the court.
Where there is the same reason, there is the same law.
We are, therefore, of opinion, that tiie first objection made to the award, is not entitled to any weight.
Nor are we inclined to allow any force to the objection, that Brockenbrough was directed to pay the money awarded, jointly with Beale. The award itself shews, that no *456 other matters were considered, but those between Richards and Beale. That direction was evidently, therefore, made in adherence to the informality of expression in the condition of the bond, which requires “ the said John H. Beale and the said Newman Brockenbrough” to stand to the award. It can only be regarded as surplusage.
Nor is there any thing in the objection to that part of the award which states, that Richards shall retain to himself a portion of Beale’s share of the corn. Every thing is to be presumed in favour of an award. We are not told how much of the corn had been used by Beale, nor how many articles had been furnished for the use of his family, by Richards. There is nothing to shew, that Richards was directed to retain more of Beale’s share of the corn than he ought to have retained.
Perceiving no ground to impeach this award, we are of opinion, that the judgment is erroneous. It must, therefore, be reversed, and judgment entered for the appellant, pursuant to the verdict.

 Watson vs. Clement, Rol. p. 5. Kyd on Awards, 51.

 Delaval vs. Maschall, 1 Mo. 274. Sr. T. Raymond, 205. 1 Lev. 285, Mitchel vs. Harris. 1 L. Raymond, 671. 12 Mod. 512. 1 Salk. 71,72.

 Rep. Prac. C. B. 116.

 2 vol. 133-6.

 Elliot vs. Cheval, Lutw. 541. See also, Jennings vs. Vandeput, Cro. Ch. 283, and Delaval vs Maschall, above cited. Kyd on Awards, 51-2-3.

 Fyall vs. Varier, 1 Rol. 261, pl, 3. Godbolt, 241. Twisleton vs. Travers, 1 Lev. 174, 2 Keb. 15, Sec also, note 7, 2 Saunders, 133. Kyd on Awards, 50.