Byrd v. Odem.

BLISS and BALDWIN, contra, cited 3 Ala. Rep. 516 ; 5 Id. 380.

---

# BYRD v. ODEM.

1. The possession by the purchaser of land under a verbal contract, making valuable improvements thereon, with the co-operation of the vendor, the execution of a receipt by the latter, for a part of the purchase money, and the acceptance of the vendee's note for the residue of the sum agreed to be paid, are sufficient to take the case out of the statute of frauds.
2. The vendor of land cannot successfully resist the performance of his agreement, by showing that the purchaser is indebted to him upon an account disconnected with the contract in its inception, or which by subsequent arrangement, is not made a part of it.
3. A contract to collect a note for another, and to receive as compensation therefor, one half the amount collected, is *champertous*, and if collected, and the money is received by the proprietor of the note, does not entitle the party performing the service to recover a moiety, or any other sum of him.
4. The statutes which provide for the submission of matters to arbitration, the manner in which awards shall be made, their effect, &c. do not abrogate the common law on the subject, according to which it seems a parol submission is good, and the award, if it speaks the intention of the arbitrators, and is unobjectionable in itself, or for matter extrinsic, it will be upheld.

5. Where one party, with the assent of another, borrows money at a usurious rate of interest, to pay a debt for which both should provide, and after the payment of such interest by the borrower, the other refuses to contribute, but by agreement with the borrower, submits the matter of interest to arbitrators, an award which adjudges him to pay half the interest will be supported.

6. Where a complainant brings money into court, insisting it is all that is due to the defendant, and the court makes an order that it be paid to the latter, upon executing a refunding bond, if the defendant execute the bond and receive the money, he will not be estopped from showing that a larger amount is due to him; and this although he does not bring into court the note which the money was intended to pay.

Writ of Error to the Court of Chancery sitting in Russell.

THE defendant in error exhibited his bill against the plaintiff, setting forth that the latter, in 1836, purchased of Peter V. Guerry, fractional section number sixteen, in township eighteen, and range thirty, and the east half of section seventeen, in the same township and range, containing in all about six hundred and thirty acres, situate in the county of Russell, for the sum of six thousand three hundred dollars, to to be paid at certain times stipulated between the vendor and vendee. Pursuant to his purchase, the defendant below went into the possession of the premises, and received from his vendor a legal title to the same.

It is further alledged, that a verbal agreement was entered into between the complainant and the defendant, by which the former purchased from the latter, an undivided half of the lands above described, at the same price *per acre*, that the defendant had agreed to pay. Thereupon the complainant went into possession, and hath ever since been engaged in the cultivation of the land—making valuable improvements on the same, with the approbation of the defendant, except as hereinafter stated.

At the time the complainant became the purchaser of such undivided half, there were unsettled accounts between him and the defendant, upon which there was a large balance due to the complainant, the precise sum not recollected. This

balance the complainant considered, and as he believes the defendant also, was to be appropriated in part payment of his purchase.

The complainant continued in possession of the land, and the defendant indebted to him as above, up to the 9th day of January, 1841, when the defendant and himself mutually a-greed to come to a settlement. Which being made, the defendant was found indebted to him in the sum of twenty-seven hundred and ninety-four dollars; and thereupon executed his receipt, acknowledging that the complainant had paid him that amount in part of his purchase of the undivided moiety of the lands above described. At the same time, the complainant made and delivered his promissory note for the sum of eleven hundred and thirty dollars, to the defendant, payable on the day of its date, and specifying therein that it was in full of the balance for the complainant's undivided half of the land in question.

It is further stated that the settlement between the complainant and defendant was full and complete; that the a-mount expressed in the receipt and note, amounting to thirty-nine hundred and twenty-four dollars, was the full amount due the defendant for principal and interest, on account of the purchase by the complainant of one half the land. The parties continued upon the most amicable terms to occupy the lands up to the 6th March, 1841, when the complainant offered to pay the amount of principal and interest due on his note, and demanded a title of the defendant, pursuant to his contract—at the same time tendering a deed of conveyance for the signature of the defendant and his wife. This deed was signed, but the defendant refused to deliver it, or to receive the money upon the note, unless the complainant would pay him a large amount, which he falsely asserted was due him for " necessaries, interest," &c.; and which had no connection with the contract in respect to the land. Complainant has repeatedly since that time offered to pay his note, and demanded a title to the undivided half of the land; but this the defendant has hitherto refused to do. Complainant has also offered to rescind the contract if the defendant would deliver up his note, and pay him the sum for which he gave a receipt; this proposition has also been rejected.

It also alledges, that since the refusal of the defendant to make the conveyance demanded to the complainant, he has and still continues to disturb the complainant in his possession, committing trespasses, and threatening to turn him out and sell the land.

The bill concludes with a prayer that the defendant may specifically perform his contract; that an injunction may issue to restrain him from interfering with or disturbing the complainant in his possession, and also prohibit him from selling the same. *Further*, that subpoena may be awarded, &c. An order was made directing an injunction to issue, agreeably to the prayer of the bill.

Afterwards, by leave of court, the complainant amended his bill, so as to state that he brought into court $1336, which it is averred was the entire amount due on his note for principal and interest. Which sum is thereby tendered to the defendant, and a prayer added, that he may be ordered to accept the same, and decreed specifically to perform his contract with the complainant.

The defendant in his answer, admits his purchase of the lands described in the bill, of Guerry, as the complainant has alledged; further, that he verbally agreed with the complainant at the time alledged, that he should become the purchaser of an undivided moiety of the same on the following terms, viz: upon the payment of one half of the amount of the notes which the defendant had given for the purchase money, with the like proportion of all interest, costs and expences which had, or might accrue thereon. The notes were of the amounts following, and payable as here stated: one note for $2,300, payable on the 25th December, 1836; two for $1000 each, payable on the 25th December, 1837, with interest on one of them for twelve months before its maturity; and another for $2,000, payable the 25th December, 1838, with interest for twelve months preceding its maturity.

The defendant paid about $1300 on the note first due, and suit being commenced against him in the Circuit Court of Russell, the complainant in consideration of the premises, and that the defendant would be compelled to satisfy the judgment which would be rendered against him, undertook and agreed, to pay off and discharge the two notes of $1000

each, with all interest and costs, (suits being also brought thereon against the defendant.) *Further*, that he would pay his proportion of the note given by the defendant for the third and last instalment. It was also agreed, that if the parties should be compelled to borrow money, with which to discharge the notes so made by the defendant, the complainant would pay to the defendant one half the interest which he would have to pay in order to make the loan.

The answer further alledges, that at the time of making the verbal agreement between the parties, it was also stipulated that the complainant should move upon the lands, and bring with him a number of hands equal to the defendant; that they should jointly cultivate the same and divide the proceeds equally; that the defendant should keep the possession of the land until the complainant should pay his part of the purchase money, pursuant to his contract, and when such payment was made, then the defendant was to execute a conveyance to the complainant for an undivided moiety. It was agreed, that if either party after the execution of such conveyance desired to dispose of his interest in the lands, then the same might be sold at auction to the highest bidder.

It is admitted that after the verbal agreement was made, the complainant moved upon the land, but it is affirmed that he did not provide for the payment of the two notes of $1000 each, that executions issued upon the judgments thereon rendered against the defendant, and were in the hands of the sheriff for collection; in order to satisfy the same, the defendant was compelled to borrow about two thousand dollars for two years at twenty per cent. per annum: which was done not only with the consent and approbation, but at the solicitation of the defendant. The last note was not provided for by the complainant, but being put in suit, was paid after judgment, with interest and costs, by the defendant.

It is further alledged, that all the improvements made on the land by the complainants, were made with the aid and assistance of the defendant's hands, in the years 1839 and 1840.

The answer admits that the parties agreed to come to a settlement at the time alledged in the bill, of their accounts with each other. *Further*, that the defendant was indebted

to the complainant to the amount specified in the receipt, which he gave him (and which is exhibited with the bill,) including the sum of $1329 collected by the defendant of Daniel McDougald. But it is insisted that the receipt embraces the accounts of the complainant against the defendant alone, and that the accounts against the complainant were to be deducted from the amount expressed in the receipt when the defendant would make out the same on the Monday following its date. The defendant has exhibited an account with his answer, which shows that he claims a balance due from the complainant beyond the note of $1192 74.

It is also stated that at the time the complainant obtained the receipt, he took many papers from defendant's table, and threw them into the fire, among which were the notes, &c. by which the items of his account could be sustained; in consequence of such unauthorised act, these notes cannot be produced. One of the notes thus destroyed was a note for $135, given by the complainant to James Holt, and paid by the defendant at the request of the former, but for which the defendant has never been reimbursed.

In respect to the note of McDougald mentioned above, the complainant was its proprietor, but being unwilling to put the same in suit, requested the defendant to sue thereon in his own name, and in consideration thereof agreed to allow the defendant one-half of the sum he might be able to collect thereon. He collected on that note the sum of $1329, and the complainant has been allowed a credit for the full amount thereof in the receipt, notwithstanding his contract with the defendant, which the latter insists entitles him to one-half that sum.

It is insisted that the defendant should not be concluded by the receipt; for after it was given, on 24th July, 1841, the complainant and defendant, under their hands andseals, submitted to arbitrators of their own selection, a certain controversy pending between them in reference to the amount of interest paid by the defendant for money borrowed,to make payment for the land in question. Which interest it is said, constituted a·part of the defendant's account, against the complainant at the time of the settlement, but was not then adjusted. The submission to arbitration, and the award, are

exhibited with the answer, from which it appears that the sum of three hundred and twenty-five dollars and sixty cents, are determined to be due from the complainant for interest on two thousand and thirty dollars for two years.

The answer further states that the complainant, on the 6th day of March, 1841, demanded a conveyance of the undivided half of the lands, which the defendant and his wife executed, and were then and still are willing to deliver to the complainant upon payment of the several sums which the defendant's account states that he is indebted to him. But the justness of the account is denied, and its payment consequently refused.

The defendant denies that the complainant ever did tender him the amount due `on this note; affirms that he has only charged the same rate of interest that he had to pay for money borrowed; and that the award does not allow even a moiety of the sum paid by the defendant for interest. It is admitted that the complainant has often demanded a conveyance of an undivided half of the land, but the defendant has refused a compliance because the complainant would not pay what he insists is due him upon the contract. Defendant denies the commmission of trespasses, and concludes his answer by insisting upon the statute of frauds.

The order of the chancellor which gave leave to the complainant to amend his bill by stating that he had brought the money due on his note, with interest, into court, and offering to pay the same to the defendant, further directs, " that on the defendant's entering into bond with good security to refund if the court shall so order, then the register shall pay over said sum of money to the defendant." A bond was accordingly executed by the defendant, with sureties, and the money paid over to him, upon his own application.

Depositions were taken at the instance both of the complainant and defendant, but it is not deemed necessary to recite them here : so far as they influence the judgment of this court, they are recited in the opinion that follows.

The chancellor was of opinion that the contract sought to be enforced was not obnoxious to the objection of the statute of frauds, and if supported, it should be specifically enforced: that the answer admitted the important allegations of the bill,

96

denying only its statement in respect to the time of the payment; that time was not of the essence of the contract, taking the answer to be true; for the want of punctuality was anticipated, as shown by the alledged stipulation on the part of the complainant to pay costs and interest, if he did not meet his payments promptly; that a forfeiture of the contract was not only not claimed, but defendant avows his willingness to convey to the complainant upon being paid what he now considers to be due.

It was supposed by the chancellor that the answer, in denying the fullness and conclusiveness of the settlement, was irresponsive to the bill, and it devolved upon the defendant to sustain it, and thus do away the effect of his receipt, given professedly for a balance of the purchase money : *Further*, the non-production of the complainant's note, and the acceptance of the money paid into court by him, tended to prejudice the defence, if it did not estop the defendant from insisting that he was entitled to more than he had received upon his contract with the complainant. With respect to the submission to arbitration and award made under it, their identity with the transaction in question, it was considered was not shown ; at any rate it was supposed that the proof in respect to them, was not such as to make the payment of the sum awarded, a condition precedent to a specific performance by the defendant. Thereupon it was adjudged and decreed that the contract of the defendant, as stated in the bill, be specifically executed, &c. ; and that each party pay one-half the costs.

J. E. Belser, for the plaintiff in error, insisted that the answer set up a contract different from that stated in the bill, is responsive to the bill, and not disproved by the testimony. It states the time when the complainant was to pay, his failure to do so at the time, the borrowing of money at a heavy interest by the defendant, one-half of which was to be borne by the complainant, and his refusal to comply. But if the contract stated in the answer is in avoidance, it is then insisted that it is sustained by the proof. Time may be of the essence of the contract, and is so when the party seeking relief is in default without excuse. Complainant made no ten-

der of the balance due, and the bill should have been dis-missed because it was not paid into court. [4 Porter's Rep. 297 ; id. 374.]

Complainant says that his settlement with the defendant was final, and it was supposed that the testimony of Arthur supported the allegation. Although this witness affirms such to be the fact, yet his evidence shows that the defendant denied it, and that the parties had a controversy about it. The defendant claimed, in addition to the note, $1192—the receipt and note are not conclusive evidence of a settlement. The answer upon this point is a direct negative, and is sustained by the depositions of Strickland and Rawles, as well as the replication, which show that the complainant called for his account subsequent to the date of the receipt.

The submission and award show the amount paid by the defendant for interest, are in themselves conclusive upon the complainant, and connected with the transaction in question by the answer, and the deposition of Wilkinson. [4 Ala. R. 60.]

It is shown by the testimony of Strickland what was the amount of McDougald's note, that the defendant was entitled to one half collected thereon—also that the defendant had paid to another person $130. As to the non-production of the note given by the complainant to the defendant, it is enough to say, that it was admitted by the former, never called for by him, and its vitality has been destroyed by the decree.

The reception by the defendant, of the money brought into court by the complainant; and taken out pursuant to an order for that purpose, cannot conclude any matter of defence. He has always been willing to execute the proper evidence of title to the complainant, and only contends that the balance due upon the purchase should be paid him. The chancellor not only refuses such a decree, but has cut off the defendant from all prospect of a recovery, by failing to reserve the right to sue in future.

A specific performance will not be enforced where it would operate unjustly, or be greatly prejudicial to the defendant. [1 Ala. Rep. 458.]

E. W. PECK and L. CLARK for the defendant in error.

COLLIER, C. J.—The possession by the complainant, of the premises in question, under a verbal contract of sale— making valuable improvements thereon with the assent and co-operation of the defendant, the execution of a receipt by the latter for a large sum of money in part payment of an undivided half of the land purchased by the defendant of Peter V. Guerry, and the acceptance by him of the complainant's note for the residue of the purchase money, are quite sufficient to take the case out of the statute of frauds.

In respect to the advance of money or other ground of indebtedness, it is enough to say, that so far as they are disconnected with the purchase of the land, either in the inception of the contract, or by subsequent arragement, they cannot be taken into consideration in determining whether a specific performance by the defendant should be enforced. This conclusion will of course place out of view the entire account of the defendant, except items which embrace the demands for one half the amount collected on McDougald's note, and interest upon money borrowed for complainant's benefit. The first of these items cannot be regarded as a legal charge ; and consequently is not recoverable. It is explicitly stated by the defendant, in his answer, that the complainant was unwilling to sue McDougald on the note which he held against him, and agreed with the defendant to allow him one half of what he might collect, if he would institute a suit thereupon in his own name. This agreement is the ground of the defendant's claim to a moiety of what he collected, as the result of a seriously contested action on the note. Assuming that the answer is literally true, and the agreement cannot be enforced. To assist one with money or otherwise, to prosecute or defend, except in some special cases in which it is tolerated out of charity and compassion, is an offence at common law called *maintenance*, punishable with fine and imprisonment. So, to carry on a party's suit at one's own expense, under an agreement to divide the matter sued for between them, if they succeed, is a species of maintenance designated *champerty*. Now it is perfectly clear, that the contract of the parties in respect to McDougald's note, con-

templated the commission of *champerty*, by the defendant, and taking his statement to be true, the offence was actually consummated. This being the case, the stipulation was in violation of law, and a court of justice will not lend its aid to enforce it.

The defendant's answer is sustained by the testimony of the witness, Strickland, in the allegation that the complainant was to pay half the purchase money, costs, and interest on borrowed money; that he was to provide for the second payment. It is shown by other witnesses that complainant failed to meet this payment, and authorized the defendant to borrow the money, cost what it might. Defendant accordingly borrowed the money, at 20 per cent. interest, which he paid on more than two thousand dollars for two years. Whether the complainants undertaking to make the defendant's second payment to Guerry, and subsequent authority to borrow money at any rate of interest, would impose on him the obligation to pay more than eight per cent., is a question which, in the present condition of the case, need not be considered. And it is alike unimportant to inquire, whether the defendant gave the receipt to the complainant, and accepted the note of the latter as the result of a final settlement of their indebtedness to each other; no matter what might be the conclusion upon these points, if they were now presented. It is shown by the answer and proof, that the parties, after the settlement was made, differed as to the liability of the complainant to pay interest upon money which the defendant had borrowed, to enable him to pay for the land; and for the purpose of adjusting that difference, submitted the matter to five individuals chosen by them. These arbitrators made their award, in which they find that the defendant borrowed two thousand and thirty-five dollars, and adjudge that the complainant should pay him interest thereon for two years, amounting to three hundred and twenty-five dollars and sixty cents; further, that the interest should be considered as due at the time the award was made. True, the submission was not made under the direction of our statutes, in respect to arbitrations, yet these statutes have never been supposed to abrogate the common law upon the subject; but are regarded rather as cumulative, except so far as they

may come in conflict. Now to entitle a party to have an a-ward in a case not pending in court, made an operative judgment on motion, it may be necessary that the provisions of the statutes should be followed, yet there are no negative terms employed that exclude the idea that a submission may be made by parol or otherwise, as at common law.

That arbitration and award was recognized at the common law, as a mode of adjusting matters in dispute, especially such as concerned personal chattels, or personal wrongs, is a clear proposition. [3 Bl. Com. 16.] And whenever the thing in dispute may be passed without writing, an oral submission and an award, has all the effect of a written one. [Evans v. McKinney, 6 Litt. Rep. 264; Martin v. Chapman, 1 Ala. R. 278.] A misjudgment of arbitrators, (although it may be a misapprehension of law,) on a case fairly before them, is not alone sufficient cause for setting aside an award. [Baker v. Crockett, Hard. Rep. 388; Smith v. Smith, 4 Rand. R. 95.] It has accordingly been held, that if an action of slander be submitted, and the arbitrators award a sum of money for words which are not actionable, the court will not interfere to set it aside. [Shephard v. Watrous, 3 Caine's Rep. 166; see also, Walker v. Sanborn, 8 Greenl. Rep. 288; Smith v. Thorndike, Id. 119; Bigelow v. Newell, 10 Pick. Rep. 348.] Where however the award is palpably against law, when the arbitrators *meant to decide otherwise*, the court it is said should set it aside; for it is not what the arbitrators intended it should be. [Jones v. Frazier, 1 Hawks. Rep. 379; Greenough v. Rolfe, 4 N. Hamp. Rep. 357; Roosevelt v. Thurmau, 1 Johns. Ch. Rep. 220.] But if they intended to conform to what equity and good conscience required of the parties, rather than strict law, their award should be supported. [Jocelyn v. Donnel, Peck's Rep. 274; Stevens v. Pearson, 5 Verm. Rep. 503; see also, 14 Johns. Rep. 96.]

Again; courts construe awards with great liberality and latitude, and according to the intention as indicated by the entire instrument; and every reasonable intendment is to be made in favor of it. [Joy v. Simpson, 2 N. Hamp. R. 179; Gonsales v. Deavers, 2 Yeates' Rep. 539; Sumter v. Munell, 2 Bay's Rep. 450; Richards v. Brockenbrough's adm'r,

1 Rand. Rep. 449; Archer v. Williamson, 2 Har. & G. Rep. 67; Karthous v. Ferrer, 1 Pet. Rep. 222.]

We have stated these principles to show that the award is decisive of the dispute in respect to the interest upon money borrowed by the defendant; that, whether the conclusion of the arbitrators was conformable to law or not, is wholly immaterial, as, instead of failing to express their intention, it is fairly inferible that the award is precisely what they intended. The sum adjudged to the defendant is affirmed to be then due, and of course could not have been accounted for by the complainant, in the settlement he had with the defendant on the 9th January, 1841.

The Chancellor supposed that the connection of the arbitration and award with the contract of the parties in respect to the land, was not sufficiently apparent to authorize the court to consider it as an objection to the relief prayed. If the submission and award are considered without reference to any thing extrinsic, the objection to their relevancy would be well founded. But they are introduced by the defendant as exhibits to his answer, with suitable explanations, showing their pertinency; and in this respect the answer is well sustained by the proof. Taking all these together, and the conclusion must be, that in order to complete his payment for the land, the complainant should satisfy the award. This being done, no objection is perceived to the enforcement of a specific execution of defendant's contract.

The failure of the defendant to bring into court the complainant's note, and the withdrawal, under its order, of the amount thereof, which the complainant had deposited with the Register, cannot impair the defence set up to the relief sought. No requisition seems to have been made for the production of the note, and the defendant was entitled, as both parties admit, to the amount thereof; and the question was, whether more was due. The order of the court was intended to do justice to the parties as near as might be, pending the litigation, without intending in any manner, either in itself, or its consequences, to affect their rights *ultimately*.

Whether the amount adjudged by the award to be due to the defendant may not be overbalanced by what the latter is indebted for the occupancy of more than his proportion of the

land in controversy, the record will not enable us understandingly to determine. That the defendant has since 1841, occupied largely more than a moiety of the cleared land, is apparent from the testimony ; but how long he occupied it, or whether his possession still continues, or whether he has not expended much more labor than the complainant in making improvements—under what agreement (if any) improvements were made—whether his occupancy more than compensates all the labor he performed beyond an equal proportion, are questions that should be adjusted, and reported upon by the master. That these matters, and such others as appropriately arise, may all be fairly and equitably settled, after a reference and report, the decree is reversed and the cause is remanded. In thus disposing of the cause, it is not intended to intimate, that if the balance shall be found to be in favor of the complainant, he will, under the frame of his bill, be entitled to a decree for the amount.