# Wolff v. Shelton's Executors.

*Bill in Equity to set aside Award, and settle Partnership Accounts.*

1. *When equity will set aside award, and settle partnership accounts.* — A court of equity will set aside an award for fraud, or for such gross mistakes as amount to fraud, and proceed to settle the accounts of a dissolved partnership, which were submitted to arbitration, when the parties themselves disagree, and the accounts cannot be otherwise adjusted.

2. *Conclusiveness of award.* — An award, whether at common law, or under the statute, is the judgment of a court constituted by the parties themselves, is final and conclusive as to the matters submitted, and can only be impeached for fraud, want of notice (when notice is required), or improper conduct on the part of the arbitrators, which is injurious to the party complaining; and, like the judgments of other courts, all reasonable presumptions are to be made in its favor.

3. *Withdrawal of submission.* — When the arbitration is at common law, a withdrawal of the submission, by either party, dissolves the court, and an award subsequently made is a nullity; but this defence against the award is available at law, and constitutes no ground for a resort to a court of equity.

4. *Construction of submission, as to matters submitted.* — Under a submission to arbitration between a surviving partner and the executors of his deceased copartner, which recites that, " although the parties can, without trouble, separate and divide the partnership property on hand, they cannot adjust and settle the books and partnership accounts;" and that they therefore agree to submit to arbitration " the whole matters of the account," — the arbitrator is neither required nor authorized, in stating the accounts, to determine anything as to the capital stock contributed by the respective partners.

5. *Payment of individual debts with partnership property.* — If one partner, being indebted to his copartner, discharges the debt by paying a debt of equal amount due from his copartner to a third person, but makes the payment with money or property belonging to the partnership, he can only claim, on settlement of the partnership accounts, a credit for one half of the amount so paid.

APPEAL from the Chancery Court at Mobile.

Heard before the Hon. ADAM C. FELDER.

The bill in this case was filed on the 28th December, 1869, by Samuel Wolff, against the personal representatives of his deceased copartner, James T. Shelton, who were the widow and two sons of said decedent; and sought to set aside an award, which had been made under a submission of the partnership accounts between the parties; also, to enjoin an action at law on the award, and to have the partnership accounts stated and adjusted under the decree of the court. The partnership between said Wolff and Shelton was formed on the 23d December, 1867, and was to continue for three years; but it was dissolved by the death of said Shelton, on the 7th November, 1868. The business of the firm was described in the articles of partnership to be, " distilling, rectifying, and selling wines, liquors, cattle, and general merchandise." The property

contributed to the capital stock by each partner was estimated in the articles at $13,000. The portion contributed by Wolff consisted of a stock of wines and liquors, then in his store in Mobile, and the fixtures in the store ; while that contributed by Shelton consisted of a steam distillery, located about eight miles from the city of Mobile, rectifying apparatus, a grist-mill, and about twenty acres of land, on which these were situated, with the privilege of cutting wood from the adjacent lands ; also, seven mules, two wagons, and nearly three hundred hogs. Each partner was to devote his time and attention to the business of the firm, and the profits and losses were to be equally divided between them.

On the death of Shelton, a statement of the partnership accounts was made out by their bookkeeper, under the direction of Wolff, which showed that the debts due to the partnership amounted to over $11,000, the debts due by the firm about $9,500, and the stock of liquors, &c., on hand $6,673.53 ; but no account was taken of the distillery and other property in the country. Not being able to settle the partnership accounts between themselves, the parties entered into a submission to arbitration, on the 17th March, 1869, as follows : " Whereas Dr. S. Wolff and James T. Shelton were for a time, before the death of Shelton, partners, and their partnership is shown by written articles ; and now, since the death of Shelton, although his executors and Wolff can, without trouble, separate and divide the partnership property on hand, they cannot adjust and settle the books and partnership accounts ; it is therefore agreed between the undersigned, the executors of said Shelton and said Wolff, that the whole matter of the accounts be referred to the arbitrament and award of William B. Taylor ; and, to enable him to come to a just conclusion, Dr. Wolff is to furnish him with the books of the firm, the accounts thereof, and all information in his power, and the executors of Shelton may examine the accounts so made out by Taylor, or as they are furnished by the books or accounts rendered by Wolff ; and either party may introduce proof to show the true state of the accounts, and to increase the credits and debits of either party ; and when all the proof is submitted to said Taylor, and the accounts fully examined by him, he is to determine the state of accounts between the parties ; and his award shall bind us, fully and completely, and we bind ourselves to submit to the same."

The arbitrator made his award on the 25th day of May, 1869, declaring that, after an examination of all the evidence submitted by the parties, he found Wolff to be indebted to Shelton's executors in the sum of $3,500. The bill alleged that this award was false, fraudulent, and void ; that the arbi-

trator was guilty of gross partiality and injustice in his con-
duct and rulings; that he refused to be bound by the partner-
ship books, which were produced and explained to him by the
complainant, and was governed entirely by the defendants' *ex
parte* statements; that he appointed no day for the hearing, and
did not examine any witness on oath; and that the complain-
ant, finding that the arbitrator was either corrupt, or grossly
ignorant and incompetent, and had prejudged the case, and was
determined to bring out a large balance against him, notified
him and the defendants' solicitor that he withdrew from the
submission, and should refuse to be bound by the award.   The
defendants filed a joint answer, denying all the charges and
allegations of the bill as to mistakes, fraud, partiality, igno-
rance, or incompetency on the part of the arbitrator; insisting
on the validity and conclusiveness of the award, and pleading
it as a bar to the relief sought by the bill.

On final hearing, on pleadings and proof, the chancellor dis-
missed the bill; and his decree is now assigned as error.

L. GIBBONS, with THOS. H. PRICE, for appellant. — 1. The
failure of the arbitrator to pass on and decide all the matters
embraced in the submission, is fatal to the award.   Watson
on Arbitration and Award, 278; Morse on Arbitration and
Award, 345, where the following cases are cited: *Ott* v.
*Schraeppel*, 1 Selden, 482; *Wright* v. *Wright*, 5 Cowen, 197;
*McNear* v. *Bailey*, 18 Maine, 251; *Richards* v. *Drinker*, 1
Halst. 307; *Harker* v. *Haugh*, 2 Halst. 428; *Carnochan* v.
*Christie*, 11 Wheat. 446; *Varney* v. *Brewster*, 14 N. H. 49;
*Stone* v. *Phillips*, 4 Bing. N. C. 37; *Mitchell* v. *Staveley*, 16
East, 58.   The arbitrator himself states, in his deposition, " I
had nothing to do with the stock; it had all been settled and
agreed between the parties themselves."   Until this fact was
stated by the arbitrator, it was impossible to guess at the
grounds on which his award was based; and it is evident from
the articles of submission that, in this particular, he entirely
misconstrued them.   There was no dispute between the parties
as to the partnership property on hand, — the property remain-
ing in kind; but, as to the property which had been destroyed,
deteriorated, wasted, or used in the partnership business, that
was the chief point in controversy.   The property contributed
to the capital stock by Shelton remained *in specie*, and but lit-
tle deteriorated; while the stock of liquors contributed by
Wolff had been sold, or otherwise disposed of in the business.
It was impossible to settle the partnership accounts, without
first ascertaining the condition of the capital stock; for, other-
wise, it could not be told whether the partnership had resulted
in profit or loss.

[Wolff v. Shelton's Executors.]

2. The award should be set aside, on account of the gross partiality and misconduct of the arbitrator. His own testimony shows that he considered himself as acting, not as an arbitrator or judge, but as the friend and attorney of the Sheltons. He says, "Some time after I commenced my investigation, I offered Dr. Wolff a compromise of $2,000;" and again, "I told him that I was willing to settle the matter, if he would pay up $2,000." And his testimony further shows, that he advised the Sheltons to procure receipts and vouchers, if they could, and if not, then to make out their statement and swear to it; and that he did this privately, in the absence of the complainant, and without notice to him, and passed the accounts so made out, without any other proof. If this conduct on the part of the arbitrator was attributable only to ignorance, it shows gross incompetency; and as it resulted in manifest injury to the complainant, it furnishes a sufficient ground for setting aside the award. Watson on Arbitration and Award, 297, 300; *King* v. *Jemison*, 33 Ala. 499; *McCrary* v. *Harrison*, 36 Ala. 577; *Willingham* v. *Harrell*, 36 Ala. 583; Abbott's Digest, vol. i. tit. Award, § 19; Ib. vol. 8, § 2; Amer. Law Register, May, 1874, p. 571.

3. An examination of the principal items of the account, as testified to by the arbitrator as constituting the basis of his award, in connection with the testimony in the cause, will disclose such palpable errors and mistakes as must be fatal to the award. See authorities above cited; Watson on Awards, 278, 296.

4. At common law, a submission may be withdrawn at any time before the award is made. Billing on Awards, 26 Law Library, m. p. 263; Watson on Arbitration, 34 Law Library, top p. 36; *Martin* v. *Chapman*, 1 Ala. 278. The testimony shows, very clearly, that the complainant verbally notified the arbitrator, and the defendants' attorney, that he considered the arbitration at an end, and would have nothing more to do with it, and would not pay one cent of any award that might be rendered; that he did everything in fact to show that he revoked the submission. He was acting in good faith, and without the aid of counsel; and a court of equity will not enforce against him, to his great injury, and contrary to the principles of equity and justice, any technical rule founded on the old distinctions between verbal and written notices, or between revocations by parol and under seal.

E. S. DARGAN, *contra.* — 1. The award embraced all matters covered by the submission, as conclusively shown by its own terms. There was no dispute between the parties as to the capital stock, or the property which each brought into the

[*Wolff v. Shelton's Executors.*]

partnership : only " the partnership accounts " were controverted and doubtful. The account of stock was not even entered on the complainant's book, until after the award was made; and the arbitrator could not have taken notice of it, even if it had been included in the submission. Watson on Arbitration, 115; *Smith* v. *Johnson*, 15 East, 213; Cro. Eliz. 838.

2. If the award were obnoxious to this objection, it would be void at law, and the complainant would have no right to come into equity for relief against it. Watson on Arbitration, 115, mar.; 2 Story's Equity, § 1451; *Duncan* v. *Lyon*, 3 John. Ch. 356.

3. The submission being under seal, it could only be revoked by instrument in writing. 1 Bacon's Abr. 307; 8 Johns. 125; 10 Vermont, 94; 2 Parsons on Contracts, 219. But there was no revocation in fact, and no proof of any.

4. Leaving out of view the complainant's " closing entries," as he calls them, relating to the stock, the accounts cannot be stated so as to bring out a different result from that attained by the arbitrator ; and this fact is, of itself, sufficient to establish the good faith of the arbitrator, and to acquit him of the charges of misconduct and incompetency.

PETERS, C. J. — Fraud, mistake, and account, are grounds of the original and auxiliary jurisdiction of courts of equity. 1 Story's Eq. §§ 184, 110, 441. Upon these grounds, chancery will entertain a bill to set aside an award for fraud, or for such gross mistakes as amount to fraud, and proceed to settle the accounts of a partnership, when the parties themselves disagree, and the accounts cannot be otherwise adjusted. But an award, whether at common law or under the statute, is the judgment of a court constituted by the parties themselves ; and it is final and conclusive of the matters submitted, and can only be impeached for fraud, or want of notice, where notice is required, or other improper conduct of the arbitrator, injurious to the party complaining. *Wright* v. *Bolton*, 8 Ala. 548 ; 29 Ala. 325 ; 33 Ala. 481. And, like judgments of other courts, all reasonable presumptions are to be made in favor of an award ; and if by application of this principle, an award can be brought within the submission, and is in other respects unexceptionable, it will be sustained. *Reynolds* v. *Reynolds*, 15 Ala. 398 ; *Byrd* v. *Odum*, 9 Ala. 755 ; 2 Stew. 130. But the facts, in any case, constituting the grounds of relief relied on, should be clearly presented, and sustained by sufficient proof, if denied in proper manner. Rev. Code, § 3327. Here, the sole ground alleged against the validity of the award is fraud. This is directly and fully denied in the

[Wolff *v.* Shelton's Executors.]

answer of the defendants. This answer is amply sustained by the evidence. Indeed, I see no grounds to charge fraud on the arbitrator whatever. That which is assumed by the complainant to be fraud, is rather an allegation of incompetency in the arbitrator. But neither of these allegations is at all sustained by the evidence adduced in their support; and they are fully overturned by the evidence of the defendants.

If, as is alleged in the bill, the submission was withdrawn before the award was made, being a submission at common law, then the award was nothing. The withdrawal of the submission dissolved the court, and its judgment is a nullity. This defence may be made at law. It is not a fraud ; and there is no jurisdiction in equity, original or auxiliary. But, even if this were otherwise, the withdrawal of the submission is denied, and the denial is sustained by the proofs. Then, upon this allegation, the award must stand.

But, beside this, an award would be void, if there was no jurisdiction to render it : if it transcended the authority of the arbitrator under the submission. The submission is the limits of the powers of the court. *Reynolds* v. *Reynolds*, 15 Ala. 398. Here, there was no controversy as to a division of the partnership stock remaining in the possession of each partner on the dissolution of the partnership by the death of Shelton. This, then, was not submitted. The description of the matter intended to be submitted, in the written agreement of submission, prepared and signed by the parties at the instance of the appellant himself, is the *adjustment* and *settlement* of " the books and partnership accounts." Upon this description it was agreed " that *the whole matter of the account* be referred to the arbitrament and award of William B. Taylor." This was accordingly done. The award answers the submission. It does not go beyond it, and it does not fall short of it. The legal presumptions in its favor are, that it is correct. 15 Ala. 398, *supra.* The answer of the defendants, which is sustained by the evidence, shows that Wolff owed Shelton a considerable sum of money as an individual debt, — possibly above the sum of five thousand dollars, when it was paid. It was paid by Wolff, in the discharge of a debt of like amount, which Shelton owed to Ober & Anderson, but it was so paid with property of the partnership, — with whiskey. Such a payment still left Wolff liable to Shelton for one half the value of the firm property used to pay the debt to Ober & Anderson. With this the arbitrator has charged him. I see nothing wrong in this. It also appears that Shelton, out of his own means, paid considerable sums as expenses in carrying on the distillery and mills in the country. These sums were fully proven. With one half of the expenses thus paid Wolff was also charged by the arbitrator.

[Daniel *v*. Day.]

This was also correct. I do not see that Wolff offers any evidence that these charges were incorrect. It is true he asserts it, very roundly, and very broadly; but he does not prove it. If the appellant had demands against Shelton, or against the partnership, for which Shelton would have been liable, he does not show that he ever proved them, or attempted to prove them before the arbitrator; and the arbitrator shows in his testimony that he neither presented such claims to him, nor proved them. It does not appear, with any clearness, that Wolff had any means of his own, not invested in the partnership. Shelton had. He had the debt which Wolff owed him, and means to pay the expenses at the distillery. These means were devoted to the benefit of the partnership. The award returns one half of the means thus devoted to him, which, as against Wolff, he was justly entitled to have. Upon this view of the case, the decree of the learned chancellor in the court below was without error. It is, therefore, affirmed with costs.

This opinion is not to be so understood as to embarrass the defence of this case in the suit at law.