Moncube, P.
These two cases are founded upon an award, and upon the same award. The controversy in them lies in a narrow compass. I think both cases depend upon a single question, and that is: ££ "Whether the award is within the submission or not as to Sutherlin ?” If it be, then I think it is valid both as to Sutherlin and Buford. But •if it be not within the submission as to Sutherlin, then it is clearly void as to him, and a question will in that case arise, “ Whether it is not therefore void also as to Buford?” Other questions were noticed in the argument, but they seem to me to be free from any doubt or difficulty, and will perhaps be sufficiently answered by what I may say in answer to the main question above stated; though I may notice some of them more particularly in the sequel of this opinion. I will therefore proceed at once to consider the main question, “ Whether the award be within the submission or not as to. Sutherlin ?”
There is no principle of law better settled, than that ■an award to be valid must be within the submission. It would be a waste of time to cite cases in support of a principle so well settled. Indeed, it is a self-evident principle. An arbitrator derives all his authority to make an award from the submission. He has no more authority, outside of the submission, to make *80 an award between the parties than has any other person. In other words, he has no such authority at all. There is another, principle of law just as well settled as the one already referred to, and that is, that an award, being the judgment of a judge of the parties own choosing, ought to be favorably viewed by the courts; and effect ought to be given to it by them, whenever that can be done consistently with the rules of the law. One of these rules, as we have seen is, that the award must be within the terms of the submission.
In 1859, Pollock, a resident of Scotland, sold to-Fitzgerald, a resident of Virginia, a tract of land lying in Pittsylvania county, and deposited the deed therefor to the purchaser in the Bank of Virginia in Danville, it seems, as an escrow, to be delivered on the payment of the purchase money, which, or the greater part of which, was payable in deferred instal.ments. Before the money was paid, or the deed was delivered, the war came on, which, of course, cut off all communication between Pollock and Fitzgerald. During the war, a sale of the land was made by Fitzgerald to Sutherlin, through the instrumentality, it seems, of Buford, who claimed tó be the agent of Pollock, with full authority from him to do what he did. By these means the deed was obtained from the bank and delivered to Fitzgerald, who then conveyed the land to his vendee, Sutherlin. It seems that the latter paid a large portion of the purchase money due by him in Confederate currency to Buford, who received the same, and deposited it from time to time as received in bank to the credit of Pollock. After the war was over, the representative of Pollock (who had died in the mean time), upon inquiry into the state of the case, ascertained what had been done as aforesaid, *81 and that Fitzgerald and the bank had both become insolvent, leaving the purchase money due to him by the former, or the greater part of it, unpaid. Thus, of course, a controversy at once arose between Pollock’s representative, and Sutherlin and Buford ; Pollock’s representative claiming that what had been done by Buford as his agent, in regard to the delivery of the deed to Fitzgerald, the receipt of the money from Sutherlin, and the deposit of the same to his, Pollock’s credit in bank, was wholly unauthorized, and that he was entitled to a lien on the land for the payment of the purchase money and interest, which still remained due to him from Fitzgerald. On the other hand, Sutherlin claiming that the said deed was duly delivered; that the purchase money due from Fitzgerald was fully paid, and, at all events, that the said land then in his possession was not liable for the payment of the said purchase money, or any part thereof; and the said Buford claiming that he did not exceed his authority as attorney for said Pollock, and that the money received by him for said Pollock was deposited in the bank of Virginia at Danville to the credit of said Pollock, and had been lost without default on his part by the political and financial results of the late war.
Such being the controversy between these parties, it was necessary to have it determined, either by the action of the courts established by law, or by the award' of an arbitrator mutually chosen by the parties for the purpose. The country was then subject to military power, and the courts were composed of judges who had not the confidence of the public. The parties, therefore, naturally preferred to have so important a controversy determined by the award of an arbitrator' chosen by themselves; They suc *82 eeeded in finding and choosing one who, by their own admission, was suitable.in every respect to perform the duty, and who was willing and consented to do so.
. Having agreed to refer the controversy to an arbitrator, and having chosen an arbitrator so fit and competent in every respect, and who seems to have had the entire confidence of all the parties, it was natural and reasonable that they should invest him with the amplest powers to settle the controversy in such manner as he might think to be just and right. And now let us look at the submission, and see whether and to what extent such was actually the case.
The submission is by deed, under the hands and seals of the parties, who were Berryman Green, administrator of Mori’is Pollock dec’d, Morris Pollock Jr. (son and sole heir of Morris Pollock deceased), by H. Robertson, his attorney in fact, A. S. Buford, and "W. T. Sutherlin. It bears date the 24th of March, 1869; and after reciting the facts in regard to the nature of the controversy, and the conflicting claims of the parties, it further recites that “ the said Edmond Eitzgerald and the said Bank of Virginia are both insolvent, and the matters of controversy aforesaid involve novel and difficult questions of law as well ■as óf fact.” And then, after stating the qualification of Berryman Green as administrator of Morris Pollock deceased, and the authority of Harrison Robertson as attorney in fact of Morris Pollock Jr., sole devisee and legatee of - Morris Pollock deceased, to submit to arbitration any matter affecting his interest in the premises, it concludes the recitals with one in the following words: “And whereas all the parties interested (except • the insolvent Edmond Eitz *83 gerald and the Bank of Vii'ginia) are willing to settle and adjust all the matters in controversy aforesaid with the least possible delay and expense, consistent with .justice to all, and to that end have agreed to refer all the said matters of controversy, both of law and of fact, to the arbitrament and decision of Gustavus A. Wingfield, of Liberty, Bedfoi’d county, Virginia, and to be bound by his award as final and decisive, having all confidence in his industry, skill, learning and .judgment, and his impartiality and integrity of character.”
After making these recitals, the submission thus proceeds: “ Now, therefore, the said ” (parties, naming them,) “do hereby submit to the arbitrament, award and decision of the said G. A. Wingfield, all the matters of controversy aforesaid, both of law and fact; and do hereby covenant severally, each with the others, and any one of the others, in the penalty of $10,000, to abide by, keep, perform and fulfill, in all things well and truly, the award, arbitrament, decision and orders of the said G. A. Wingfield in the premises, so as such award,” &c., “shall be given in wiiting under the hand of the said G. A. Wingfield within, at the farthest, twelve months next succeeding the date of these presents.
“And we do further agree that in ascertaining the facts of the matters of controversy hereby submitted, the said G. A. Wingfield shall and may consider and weigh all the testimony that he can find, or that may be produced to him, relevant to the subject matter, whether the same would be admissible according to the sti’ict rules of evidence in court or not, giving to such testimony such weight as he may think due and proper; and having ascertained the facts of the case, to the best of his means, skill and ability, he shall de *84 cide and order the rights and duties of the parties in the premises, according to the principles of a court of equity, and shall order and award what shall he done by any or all of the parties.”
After empowering the arbitrator to fix his own compensation, and prescribe how the same and his traveling or other expenses should be paid by the parties, or any of them, the submission contains the following concluding clause:
“And we do further agree that he shall be at liberty, if he thinks proper, to make his award as to any one or more of the parties, or to any portion of the matters in controversy as aforesaid at any time within the period of twelve months aforesaid, without waiting for a full and final award of all the matters aforesaid; and such award in part shall be binding upon the parties, and in such case he shall go on to complete the full and final award as to the remaining matters as soon as practicable.”
We thus see from the submission, that, as might well have been expected from the nature of the controversy, the character and qualifications of the arbitrator, and all the surrounding circumstances, he was invested with the amplest powers for the settlement of' the matters in dispute between the parties, and putting an end to all controversy on the subject. To be sure, he was not expressly empowered to settle any matter whatever of controversy which might possibly exist between the parties, but to settle a particular matter of controversy, which was in fact, no doubt, the only matter of controversy between them. Butin regard to the settlement of that matter, and everything involved in it, he was invested with ample and, indeed, with extraordinary powers. It would have been difficult to-have used expressions stronger than those which were- *85 used in the submission, to give the arbitrator full and complete power over the subject referred to him.
And yet the learned counsel of Sutherlin and Buford contend that these provisions, or some of them, were intended to restrict and not to enlarge the powers of the arbitrator; and they refer to those relative words, such as “ matters of controversy aforesaid,” which they say are carefully used in connection with all the powers conferred on the arbitrator, for the purpose of indicating that they are to be exercised only in regard to the particular claims of the different parties recited in the preamble of the submission.
Certainly the submission relates only to the controversy which actually existed between these parties, and which is referred to in general terms in the preamble; but it was plainly intended that the most ample powers should be conferred on the arbitrator in regard to the decision of that controversy, and every question involved in it. Uo intention is manifested in the instrument that those general terms should be construed in any narrow and restricted sense, in ascertaining what was the subject of the reference. On the contrary, the preamble expressly declares that- “ the matters of controversy aforesaid involve novel and difficult questions of law as well as of fact,” and that the parties “are willing to settle and adjust all the matters of controversy aforesaid with the least possible delay and expense consistent with justice to all.”
To construe the submission in the restricted sense contended for as aforesaid, would be contrary to the settled rules of law in regard to the subject of arbitration and award, according to which rules that amicable mode of settling controversies has always been highly favored, and has recently become much more *86 so both in England and in this country. It would also be contrary to the manifest intention of the parties in this case, as indicated, not only by the terms of the submission itself, but by all the surrounding circumstances. Can we doubt that the parties intended to refer the whole matter of controversy to the final decision of such an arbitrator, one so competent to decide it, and so worthy of confidence in every respect? Can we suppose that they intended to refer only the narrow and single question of lien or no lien as to Sutherlin, and to leave the further and final settlement of the matter to the action of the courts? Their declared object was “to settle and adjust all the matrera of controversy aforesaid,” including the novel and difficult questions of law as well as of fact involved therein, “with the least possible delay and expense consistent with justice to all,” and that they should “be bound by his award as final and decisive.” And they conferred on him the fullest and most extraordinary powers in regard first “to the ascertainment of the facts, and then to the decision and award to be made thereupon. "What is said in the award about “the principles of a court of equity,” was manifestly intended, I think, not as a restriction upon the powers of the arbitrator, but rather as an enlargement of such power, and expressly to show that in settling the controversy and making his award he might apply to the case any principles of a court of equity that might be applied to it by such a court if the case were properly before it.
Having examined and considered the submission, I will now proceed to examine and consider the award.
It is a very brief and plain instrument, consisting, besides a short preamble, of but three clauses; not setting out any of the testimony in the case, nor any *87 part of the process by which the facts were ascertained by the arbitrator; but (after “having ascertained the facts of the case to the best of his means, skill and ability,”) simply deciding what were “ the rights and duties of the parties in the premises according to the principles of a court of equity,” and awarding what should “ be done by any or all of the parties.”
The preamble recites that the arbitrator, in pursuance of the submission, proceeded to arbitrate and determine the several matters of difference specified therein, the several parties being present in person, except Morris Pollock, Jr., who appeared by Harrison Robertson, his attorney in fact; and after haying heard the parties, examined their witnesses and documentary evidence, and fully considered the same, as well as the arguments of the counsel of the several parties, had decided and determined, “ and do hereby decide, determine and award, as follows, viz ”: and then follow the three clauses of the award:
“1st. That the said William T. Sutherlin do pay to the said Berryman Green, administrator with the will annexed of Morris Pollock, deceased, the sum of $7,574.67, withdnterest thereon after the rate of six per cent, per annum from the first day of May 1865 until payment; and that upon the payment of the same, the said deed from the said Morris Pollock, the elder, to the said Edmond Eitzgerald, bearing date the first day of December 1859, shall be taken and held to be the absolute deed of the said Morris Pollock, and conclusive and effectual for the conveyance of all his right and interest in or to the tract .of land therein mentioned, and the said Morris Pollock, Jr., shall be thereby forever concluded and barred from having or claiming the said land as the heir or devisee of the said Morris Pollock, the elder.
*88 “ 2d. That the said A. S. Buford do pay to the said Berryman Green, administrator as aforesaid, the sum of $4,456.29, with interest thereon after the rate of six per cent, per annum from the first day of May 1865 until payment; and that the said Buford shall be entitled to receive and have for his own use, whatever sum the said Bank of Virginia may be liable to pay on account of deposits in its branch at Danville, rpade in the name of or to the credit of the said Morris Pollock, after the first day of January 1863; and may use, and the said Berryman Green, administrator as aforesaid, shall allow the said Buford at his own proper costs, to use the name of him (the said administrator) in any proper suit or proceedings, to recover the same from the said bank or any other party who may be liable for the same; and the said Green, as such administrator, shall be entitled to recover all of the said deposits deposited in the branch bank in the name of or to the credit of his said testator before the said first day of January 1863. And
“3d.,” &c. This clause relates only to the compensation of the arbitrator.
Now, it is not pretended that this award was procured by corruption or other undue means; or that there was any, the least, partiality or misbehavior in the arbitrator. But the objection is that the award is not within the terms of the submission, and that the arbitrator exceeded his authority. If he did, the award, to that extent at least, is certainly void. I will now proceed to enquire whether he did or not.
The only objection which has been made to this award to show that the arbitrator exceeded his authority is, that it awards a sum of money to be paid by Sutherlin, instead of awarding, as to him, that Pollock’s representative had a lien upon the land *89 claimed by Sutherlin for the balance of the purchase money due to the former by Fitzgerald for the said land; and that in that respect the award is not in pursuance of the submission.
If this were so, it is manifest that the objection would be purely technical, and that Sutherlin would be actually benefited by the arbitrator’s making the •award as he did. We may presume, as no doubt was the fact, that the land was worth, and would at any time command in the market, a great deal more money than was awarded against Sutherlin; that Sutherlin was a man of wealth, had the command of money, and would instantly, of course, have paid the amount of the lien upon the land so soon as it was ascertained, and not incur the risk of a sacrifice of the land at a public sale. The arbitrator may therefore very reasonably have supposed that all that Sutherlin desired to know was, whether his land was liable to the lien claimed by Pollock, and, if so, how much money he would have to pay to relieve the land of the incumbrance, and thus to perfect his title; and, taking this view of the subject, the arbitrator therefore may have apportioned the amount due to Pollock’s administrator from Fitzgerald, between Sutherlin and Buford on equitable principles, and awarded the payment by them of their portions respectively, and that upon the payment of -Sutherlin’s portion the land should be discharged from the. said incumbrance, and the deed from Pollock to Fitzgerald become valid and effectual.
Of course the arbitrator had no right to exceed his authority, and, if he did so, his award to that extent is invalid, even though he may have supposed, and it may be true in point of fact, that the parties would be benefited by such excess of authority, unless, indeed, they confirmed it afterwards.
*90 But the question is, “ Did he exceed his authority?” And upon that question what I have just said sheds a stream of light. What authority did the parties intend to confer upon the arbitrator by the submission liberally construed in the light of all the surrounding circumstances ? It is not an unreasonable answer to that question to say that they intended to give him authority to do precisely what he did do by his award.
If the arbitrator did not exceed his authority in awarding the payment of a sum of money by Sutherlin, instead of merely awarding that the land was liable to a lien therefor, then the award is not invalid in that respect, even though he may have erred in matter of law or fact in so awarding. All the said matters of controversy, both of law and, of fact, were expressly referred to the arbitrator by the parties, who agreed to be bound by his award as final and decisive. If therefore his award, being within the terms of the submission, was manifestly wrong, both in law and fact, no court could for that cause set it aside: Because the parties preferred to submit their controversy to the final decision of a judge of their own choosing, rather than a court constituted by law,' and it would be not merely an excess, but a usurpation of authority in snch a court to set aside an award, however unjust it might appear to be, merely upon the ground that there was an error of law or of fact in the decision of the arbitrator.
But can we say that there is an error of law or fact in the decision of the arbitrator in this case? We do not know what documentary or other evidence there was, or what was said by the parties or their counsel before the arbitrator. None of these matters are set out in the award, nor was it necessary that they should *91 be. But the award does expressly affirm that the several parties were present in person, or by attorney in fact, before the arbitrator; and that he heard the" parties, examined their witnesses and documentary evidence, and fully considered the same, as well as the arguments of the counsel of the several parties; and thereupon decided and determined the several matters of difference specified in the submission, and made his said award accordingly. “ Everything is presumed in favor of awards;” is the language of Cabell, J. delivering the opinion of this court in Richards v. RrocJcenbrough’s adm’or, 1 Band. 449, 456. Bow let us presume in favor of this award (and it is certainly not an unreasonable nor an improbable presumption), that it appeared to the arbitrator, from the documentary and other evidence which we see was before him, that it was agreed between the parties that Sutherlin should apply the purchase money due by him for the land to the payment of the balance remaining due by Fitzgerald to Pollock for the same land, and thus should indemnify Fitzgerald, the intermediate vendee of Pollock and vendor of Sutherlin; and that at the time of the award there remained due for the land, by Fitzgerald to Pollock, a balance of $12,030.81, and by Sutherlin to Fitzgerald a balance of $7,574.67. Can there be a doubt but that a court of equity in such a case, at the suit either of Fitzgerald or of Pollock, would decree the balance due by Sutherlin to be applied pro tanto to the payment of the balance due by Fitzgerald to Pollock, and would therefore give a personal decree, as the arbitrator has given a personal award in favor of Pollock’s administrator against Sutherlin for the said balance of $7,574.67, taking care in the decree, as the arbitrator took care in his award, that upon such payment Pollock’s deed to Fitz *92 gerald should become good and valid, and Sutherlin should hold the land free from any lien or claim on the part of Pollock or his representative? Certainly Fitzgerald would have had a right to such relief in a suit in equity brought by him; and Fitzgerald being insolvent, certainly Pollock’s representative would have had an equal right to such relief in a suit in equity brought by him. All the parties, except Fitzgerald (who was not only insolvent, but I believe also a nonresident of the state), having referred the matters in controversy between them to the decision of an arbitrator, and expressly empowered him to “ decide and order the rights and duties of the parties in the premises, according to the principles of a court of equity,” and to order and award what should be done by any or all of the parties, it follows, as a necessary consequence, that the arbitrator had power to award, and upon the presumption aforesaid, properly awarded as he did, that Sutherlin should pay to Pollock’s administrator the said sum of $7,574.67, with interest thereon as mentioned in the award.
But even if the arbitrator erred, and plainly erred, in his decision in this respect, no court has a right to set aside his decision, and make one of its own. All the said matters of controversy, both of law and of fact, were expressly referred by the parties to his decision, which, whether right or wrong, must be final and conclusive,- unless the award be invalid; which it cannot be upon the ground that the arbitrator erred in his judgment, either upon the law ■or the fact. Smith $e. v. Smith ¿•c., 4 Band. 95, is authority upon this point. The question submitted in that case was, whether certain slaves were to be considered as undisposed of by a testator, or were to go to his residuary legatee. The arbitrators de *93 cided that the property was not bequeathed by the testator; and the court of appeals was clearly of opinion that they mistook the law. But the award was nevertheless held to be binding. 2 Bob. Pr., old ed., p. 195.
Other presumptions could, no doubt, be fairly made to sustain the validity of the award; but surely I have already said enough for that purpose; and I am therefore of opinion that the arbitrator did not exceed his authority in awarding that Sutherlin should pay to Pollock’s administrator the sum of $7,574.67, with interest, as aforesaid.
These eases were very ably argued by the counsel on both sides, and I would be glad to notice in detail other grounds of objection taken by the counsel of Sutherlin and Buford, and also to review the authorities referred to by them; all or most of which I have examined. But I do not think it necessary to do so, after what I have already said. The learned counsel for those parties contended that the arbitrator awarded what he was not authorized to award, to wit: the payment of money by Sutherlin and Buford respectively to Pollock’s administrator; and omitted to decide what alone he was authorized to decide, to wit: in regard to the conflicting claims recited in the preamble, and especially the claim of Pollock’s administrator to a lien upon the land for the payment of the balance claimed to be due to him by ' Fitzgerald. They seemed to think that the proper and only office of the arbitrator was, to' respond directly to the question of lien or no lien, and other like questions arising on the recitals of the preamble. And that the question of lien or no lien lies at the foundation of the controversy, and was necessary to be decided before and above all other questions in the case. With the high *94 est respect for the learning and ability of these gentlemen, I think they place a too narrow and restricted construction upon the submission, when it ought to be liberally construed, according to the rules of law which govern all arbitrations, but especially in view of all the surrounding circumstances before referred to. The question of lien or no lien was certainly an all important question in the case, but it was as a means rather than an end which the parties had in view. The end of the controversy was the receipt and payment of money, and the quieting of a title to land. Pollock’s administrator claimed that money was due to him by Fitzgerald for the purchase of land which had not been conveyed to Fitzgerald by a valid deed, but which the latter had sold to Sutherlin; and that he, Pollock’s administrator, had alien on the land for the payment of said purchase money. How it was necessary that the arbitrator should enquire into and satisfy himself upon all these and other like questions arising in the case; but it was not at all necessary that he should state in detail in his award, all the steps taken, and all the facts ascertained by him in the course of his enquiries. The body of the submission, not the preamble, expressly prescribes his duty in this respect. The parties there agree, “that, in ascertaining the facts of the matters in controversy hereby submitted, the said G-. A. Wingfield shall and may consider and weigh all the testimony that he can find, or that may be produced to him, relevant to the subject matter, whether the same would be admissible according to the strict rules of evidence in court or not, giving to such testimony such vreight as he may think due and proper; and having ascertained the facts of the case to the best of his means, skill and ability,” (now we come to what he is to set down in *95 his award) “shall decide and order the rights and duties of the parties,” &c., and shall order and award what shall be done by any or all of the parties.” For example, shall decide and award how much money Sutherlin should pay to Pollock’s administrator, if any? What is to be the effect of the deed from Pollock to Fitzgerald upon such payment by Sutherlin? How much money Buford should pay to Pollock’s administrator, if any? and what should be his, Buford’s, right in regard to the money deposited in bank, &c.? In making such an award, the arbitrator necessarily decided all the questions arising in regard to the claims referred to in the preamble, and necessarily decided them in a certain way, which we cannot misunderstand.
I have referred to very few authorities in the foregoing opinion, because I think there can be no controversy in regard to the law involved in the case. I might refer to many cases, English and American, in support of what I have said in regard to the favor which is shown to awards; but surely I need not; for their name is legion, and they speak to that effect, una voce. Hone of those decisions tend more strongly iú that direction than do those of this court. Among them are the following: Ross v. Overton, 3 Call 309; Morris v. Ross, 2 Hen. & Mun. 408 ; 1 Rand. 449, Richards v. Brockenbrough’s adm’or; 3 Id. 122, Head v. Muir, &c.; Armstrong v. Armstrongs, 1 Leigh 491; and Bassett’s adm’or v. Cunningham’s adm’or, 9 Gratt. 684. In Richards v. Brockenbrough, the court say that “everything is to be presumed in favor of an award.” In Head v. Muir, &c., Judge Carr, in delivering the opinion of the court, reviews very fully the subject of awards. In Armstrong v. Armstrongs, the same great judge delivered an opinion in which all the *96 other judges concurred, in which it was held that “ all fair presumptions shall be made in favor of an award; and if on any fair presumption the award may be brought within the submission, it shall be sustained." In Bassett’s adm’or v. Cunningham’s adm’or, Judge Allen delivered an opinion in which all the other judges concurred, in which the same doctrines are maintained.
The result of my opinion is, that in the case of Pollock’s adm’or v. Sutherlin, the judgment of the Circuit court must be reversed, the defendant’s demurrer to the plaintiff’s replication overruled, and the cause remanded for further proceedings to be had therein; and in the case of Buford v. Pollock’s adm’or, the judgment of the Circuit court must be affirmed.
Anderson, J. concurred in the opinion of Moncure, P.