Staples, J.,
delivered the opinion of the court.
The first error assigned in the petition is to the judgment of the hustings court overruling the defendant’s motion to quash the indictment for defects apparent on its face. The indictment charges that the defendant, Helfrick, on the 19th of September, 1877, did sell and deliver to one Warren L,. Wheelright, one drink of malt liquor, and unlawfully did, then and there, wilfully fail, immediately upon the sale of said drink of malt liquor, in the presence of the said Warren I,. Wheelright, to turn the crank of the proper register until the bell thereof *had struck once, and the indicator on the dial of said register had moved one point for the said drink of malt liquor so sold by him, the said Phillip Helfrick as aforesaid, the said Phillip Hel-frick being then and there a bar-room keeper and a licensed bar-room liquor dealer.
The point made by the defendant’s counsel is, that the indictment does not show, nor does it otherwise appear, that the malt register had been placed in the defendant’s bar-room in the manner required by the act of March 30th, 1877; the third and fourth sections of that act provided for the construction of the registers, and prescribed the mode in which they should be placed in the bar-rooms of every licensed bar-room liquor dealer, and until this was done, no such dealer could be required to discharge the duties enjoined; and the indictment upon its face should show by direct averment that the register had been placed in the bar-room of the defendant. Conceding that such an averment is essential, we are of opinion that in this case it has been made, if not directly, at least by inevitable intendment.
It is averred that the defendant failed to turn the crank of the proper register until the bell thereof had struck once and the indicator on the dial of said register had moved one point. This is substantially a charge that there was a register in the defendant’s bar-room at the time alleged. The indictment pursues the language of the statute; and this is generally sufficient. The rule laid down by the authorities is, if every fact necessary to constitute the offence is charged or necessarily implied by following the language of the statute, the indictment will undoubtedly be sufficient.
In Rex v. Lauby, 2 Strange R. 903, on an information for attempting to persuade a witness not to appear and give evidence against Japhet Crooke for forgery, it was objected that the information did not positively aver *that Crooke was indicted. It was only laid that the defendant, knowing that Crooke had been indicted and was to be tried, did so and so; whereas, in _ all criminal cases, the fact must be positively alleged and not by inference. The court of king’s bench held the information good. It is said, “Giving a mortal wound, receiving stolen goods, knowing them to be stolen, are all as loose. And there is no inconvenience, because if there was no such indictment proved at the trial, the defendant must have been acquitted.” And so here, if no register is proved on the trial to have been placed in the defendant’s bar-room, he must have been acquitted.
The case of the United States v. Mills, 7 Peters, R. 138, is perhaps a still stronger authority. There the indictment alleged that the defendant procured and advised Joseph J. Straughan, a mail carrier, to rob the mail. It was objected that the indictment ought to aver directly that the carrier did in fact commit the offence of robbing the mail. The supreme court said it must appear upon the indictment undoubtedly, that the mail had been robbed, but it was of opinion that the indictment sufficiently alleged that fact. It charged the defendant not only with advising but procuring and assisting Straughan to secrete and embezzle. This necessarily implied that the act was done, and is such an averment or allegation as made it necessary on the part of the prosecution to prove that the robbery had been committed. If authorities were needed upon this question, we think these are sufficient.
The main ground of objection, however, to the indictment is founded upon the alleged unconstitutionality of the act of March 30th, 1877. The provision to which this objection is particularly directed is found in the 3d section of chapter 353 of that act. It declares “it shall be the duty of the auditor of public accounts, as soon *after the passage of the act as practicable, to cause to be constructed in sufficient numbers, by letting to the lowest bidder, an apparatus to be known as a barroom register. Whenever he shall have the same constructed in sufficient numbers to supply any county, ciíy or town therewith, he shall notify the commissioner or commissioners of the revenue of the fact, and forward the same to him or them in the safest and most economical manner, taking a receipt for the same. The cities of the commonwealth shall be first supplied.” It is insisted that so much of this section as directs the cities first to be supplied with registers is an invidious and unjust discrimination against the city liquor dealers, and in favor of the country dealers; that the effect is to impose upon the former a new and burdensome system of taxation, from which the latter are wholly exempt for a considerable period, and thus to violate the rule which secures equality and' uniformity of taxation upon all engaged in the same business.
This objection is a very grave one, striking at the foundation of the act in question: and although the objection may be removed *624 by amendment, still, if it is well taken, the state has no just title to a dollar of the revenue she has derived from this source, and may be called on to refund at the suit of those who have been subjected to the tax. It is universally conceded that to declare a legislative enactment void is the exercise of a judicial function of a most delicate character, never to be done except upon the clearest conviction of the unconstitutionality of the law. Nowhere has this doctrine received a more unqualified sanction than has been given to it by this court. See the cases of Eyre v. Jacob, sheriff, 14 Gratt. 422, and cases there cited; Homestead Cases, 22 Gratt. 266; Roberts’ adm’r v. Cocke, &c., 28 Gratt. 207; Reed v. Union Bank of Winchester, supra. There is another *principle equally familiar and equally well settled as that just mentioned, which must not be forgotten in considering this question; and that is, that the legislature possesses the full, absolute, supreme power of taxation, except so far as it may have been surrendered to the general government, or may be interdicted by the restrictions and mandates of the state constitution. We do not go to our constitution to see what powers of taxation are given, but to ascertain what limitations upon its general sovereign power are imposed by its provisions. Eyre v. Jacob, sheriff, supra; Commonwealth v. Moore & Goodsons, 25 Gratt. 95.
And now as to the facts: It appears that the register was placed in the bar-room of the defendant, and in other places of the city, about the 11th of September, 1877. After.wards other cities of the state were supplied; at what time does not appear. When the indictment was found against the defendant on the' 25th of September, not more than half the cities and towns and some of the counties had been supplied with registers.
What has been since done, the record does not inform us. All that can be said is, that •during the period between the 11th and 25th September, the defendant was required to ■conduct his business under the new system, while licensed dealers in other parts of the state, not being supplied with the registers, were allowed to proceed under the licenses ■previously granted them. The learned counsel for the defendant does not rest the cause of his client upon that ground. He •concedes that if the matter of fixing the registers in the different towns and cities .and counties had been left to the discretion of the auditor, any irregularities or inequalities which might arise in its practical enforcement, might have been justly attrib-utable to the character of the duties to be performed by the officer, or to some defect of action on his *part, and might have constituted no available objection to the law itself; but inequality and want of uniformity in the burthen it imposes, he insists, are stamped upon the face of the law, and constitute the very essence of its enforcement. If- this position ibe sound, the law must be pronounced invalid, even though the auditor was ready with the registers, and had supplied every bar-room in the state the day after the defendant was supplied. Surely if the legislature foresaw the difficulties in the way of the auditor in furnishing the registers, and directed him to do what he might have done without any direction, the law is not thereby rendered invalid. If the legislature had left the whole matter to the discretion of the auditor, and he had placed the registers first in the cities, the defendant would have as good cause of complaint as he has now.
In the nature of things,, it was impossible that the registers could be put in operation all over the state — in every city, town and county at the same time. Necessarily there would be some delay due to defects in the registers, the ignorance or forgetfulness of commissioners, and to other causes not to be foreseen or provided for in giving effect to the new system of taxation. Whatever might be the foresight, care and diligence of the auditor, it would be wholly impracticable to supply at once the requisite number of registers for the entire state. Consequently there must have been some period during which liquor dealers in different parts of the state would operate under different systems. Accordingly to the argument, every man supplied with a register may . violate the law with impunity by showing there are other dealers in the state who have not been supplied.
The legislature has never attempted exact uniformity and equality in the license tax. In looking over the various tax laws which have been from time to time *passed by the legislature, we find numerous instances in which the rule of equality and uniformity has been violated. Absolute equality and justice are unattainable in tax proceedings. The most that can be done is to approximate them as near as possible. It has been repeatedly held by this court that the provisions in the constitution requiring equality and uniformity of taxation, apply only to a direct tax on property, and not to license tax, which do not adipit of a tax strictly equal and uniform in the sense contended for. But, if it be conceded that the rule must apply to all subjects, yet it can only be applied as far as practicable. If a given subject be only susceptible of a modified application of the principle, it must receive this, and not be rejected, because the rule cannot be applied with perfect precision to its whole extent and in all its results. See Eyre v. Jacob, sheriff, 14 Gratt. 422, and the laws there cited; see also Ould & Carrington v. The City of Richmond, 23 Gratt. 464; which last case is a strong illustration of this doctrine. It is not meant to assert that the legislature may apply one system of taxation as a permanent revenue measure in one part of the state and another system in another part of the state.' Such legislation would constitute at best but arbitrary exactions under the forms of taxation. But when a new and important revenue system is adopted and *625 put into execution, which is but an experiment, a large discretion must be left to the legislative department as to the mode and manner of assessment and collection of the tax. If the delay in a complete enforcement of the law is not unreasonable, if it is such as might be fairly expected under all the circumstances, the courts cannot interfere ■with it, because they may think some other more satisfactory and expeditious means might have been adopted. When a law violates no express provision of the constitution, but is ^assailed because it is supposed to be contrary to the principles of good government, the injustice and oppression ought to be very clear and flagrant which would justify the judiciary in interposing and arresting its execution.
What motives influenced the legislature in directing the registers first to be supplied to the cities, it is not for us to inquire. It was, perhaps, easier to reach them than the counties. Commencing here, in the city of Richmond, the auditor would be enabled to see at once the practical working of the new plan; to detect and find out any defects in the machinery, and anply the remedy before the registers were forwarded to the distant counties and cities. If it be conceded that the object in part was the larger revenue to be derived from the cities, it does not follow that the law is violated on that ground. This court has nothing to do with the motives of the legislative department, unless they are apparent on the face of the statute, and evince a design unmistakably to impose invidious and oppressive legislation upon a particular class. The main object of the Moffett register act would seem to be a change in the mode of assessing and collecting the tax upon licensed liquor dealers and to graduate the amount of the tax by the sales made. Tf the sum paid into the treasury by the defendant is large, it is only because his sales are also large, and there is every reason to believe that what is so paid is derived mainly from the consumer. The burden, whatever it be, borne by the defendant, is in common with those around him engaged in the same business, and if it be different from that of others pursuing the same occupation in other parts of the state, it is only for a brief period reasonable in itself, and such as is necessarily incident to the execution of a new and untried system of revenue. It cannot be expected that the courts will search out these temporary inequalities as a ground for attributing to the legislature *the exercise of unconstitutional powers. On the contrary, they should rather be astute to sustain that body in the exercise of one of the highest and most essential attributes of sovereignty, the power of taxation.
Upon the whole, we are of opinion that the judgment of the hustings court is correct, and should be affirmed.
Judgment affirmed.