## JARED AND ARCHIBALD BORING *vs.* SAMUEL J. BORING.

July Term, 1867.

1. In an award made in pursuance of a general submission, the errors for which it is sought to be set aside must appear upon its face; and other parts of the record cannot be looked into to show that there is error of law or fact. But the court can look into the testimony for the purpose of determining, from the evidence and other circumstances, whether the errors were so gross or palpable as to show misbehavior or corruption in the arbitrators.
2. If parties to whose arbitrament a matter is referred, cannot complete the hearing and award on the day for which it is fixed, they may adjourn the same from day to day until it is completed; and any one interested who has been duly notified of such original meeting, and is not in attendance, need not be notified of such continuance.
3. Arbitrators are the judges as to whether it is necessary for a party to be present at a hearing, after he has been notified, and they may thereafter always proceed to a hearing, unless there is some understanding express or implied that they will not do so, in his absence.

On the 31st of October, 1863, there were pending in the circuit court of *Harrison* county three causes, as follows: *Archibald Boring* vs. *Samuel J. Boring*, unlawful detainer; same *vs.* same, injunction; and *Samuel J. Boring* vs. *Archibald Boring* and *Jared Boring*, injunction. By an agreement the matter in controversy was submitted to the arbitration of *Ebenezer Patton* and *Hiram Lynch*, who if they could not agree, or desired to do so, were authorized to call an umpire to their assistance.

At a preliminary meeting of the arbitrators they selected an umpire, one *Samuel Hoff*, and then by written notice under their hands, dated November 25th, 1863, which was

*See page 187. Judge ERVINE, of the V circuit, was called to the bench.

duly served on all the parties, appointed January 4th, 1864, as the time for hearing the matters submitted to them, and designated the Baptist church at *West Milford*, in *Harrison* county, as the place where the same would take place.

In pursuance of the notice they met at the time and place designated, and not being able to complete the hearing on the 4th, they adjourned from day to day until they finally completed their award on the 6th of January, 1864, and returned the same to court. At a special term held on the 11th of January following, in the chancery cause of *Archibald Boring* vs. *Samuel J. Boring*, the defendant obtained a rule against the complainant to show cause why the award should not be entered up as the judgment of the court; and in the chancery cause of *Samuel J. Boring* vs. *Archibald Boring* and *Jared Boring*, the complainant *Samuel*, obtained a like rule. At the March term following, in the unlawful detainer case of *Archibald Boring* vs. *Samuel J. Boring*, the plaintiff obtained a rule against the defendant to show cause why the award should not be set aside; and also a like rule in the chancery cause wherein *Samuel J. Boring* was complainant and they were defendants. At the same term the court heard the motions upon the rules, and refused to set the award aside, but entered it up as the judgment of the court.

The parties *Archibald* and *Jared* excepted to the ruling of the court in refusing to set the award aside, and their bill of exceptions, contained the grounds of their motions, which are set out in full by the judge who delivered the opinion of the court, and also the evidence heard upon the motion.

It was proven by one of the arbitrators, *Patton*, that they had originally fixed November 23d, 1863, as the time for hearing the causes, but had continued it to January 4th, 1864, at the request of *B. Wilson*, counsel for *Archibald* and *Jared*, who had written them that he could not be present until after the 1st of January, 1864; that a day or two before the trial on January 4th, 1864, *Archibald* had applied to witness for a further continuance, because he alleged that he could not be ready with his counsel and witnesses; that

witness told him that as the submission was by mutual consent he would have nothing to do with it unless it was by mutual consent also; or that if any advantage was to be taken in consequence of the absence of the counsel of *Archibald* and *Jared*, that he would have nothing to do with it, but, that he was only one of the arbitrators, and referred him to the others; that he was willing to act without the said counsel being present if the others were. That he also told *Archibald* if there was any legal advantage to be taken of him, that it should be corrected by the court as the case had to pass through the hands of the court. That on the 4th day of January, *Samuel J. Boring* and his counsel did appear, but *Archibald* and *Jared* and their counsel did not; that upon consultation with the other arbitrators it was agreed to send for *Archibald* and *Jared*, and to request their attendance as the case was going on; that they accordingly did send one *Jacob H. Fox;* that on the next day *Archibald* did come and in a conversation between witness and *Archibald*, the latter asked him what he should do; (the evidence offered by *Samuel J.* had then closed, but the award had not been rendered.) Witness replied that if he wanted to preserve the point about the absence of his counsel he had better not appear,—and he did not; that at the time, the witness had a decided opinion that the point was a good one, and good ground for setting aside the award; though he did not tell *Archibald* so, yet he must have known such was his opinion. That neither *Archibald* or *Jared* had any witnesses present at the trial. That *Archibald* had told witness that he did not want any proof but his deed, to which witness replied that if his father's (*Jared's*) title was good, he, *Archibald*, was safe; that the contest was between *Jared* and *Samuel J.*, and that he, witness, could not see that *Archibald* wanted any witnesses. That witness had told *Archibald* if his counsel was not present that he would have nothing to do with the trial, but witness thought this was before the time fixed for the first trial on November 23d, 1863. That on the day last mentioned it was agreed that on the day next fixed for trial the case should proceed whether counsel

were present or not, but that neither *Archibald* nor *Jared* were there; that at the time *Archibald* came it was suggested to him that he ought to get other counsel, and he replied that the counsel who was suggested could not come.

It was also proven by *Fox* that he went as a messenger to get *Archibald* and *Jared* to go to the arbitration, and that *Jared*, who was a very old man, did not go, but *Archibald* did; that *Archibald* asked *Patton* what he had better do, to which he replied that if he was not ready for trial he had better not appear; and that *Patton* said to him the decision would not be of much force.

There was also some proof by counsel of an effort to agree a continuance between themselves, but which was not consented to; likewise proof by *Lynch*, another of the arbitrators, that it was agreed at the November meeting that they would go into trial at the next meeting whether counsel were present or not.

None of the testimony offered on the trial before the arbitrators was introduced except that it was proven that a sister of *Archibald* and *Samuel J.* was then examined to prove that *Archibald* knew at the time he accepted a certain deed from *Jared* that the latter had made a will.

*Archibald* and *Jared* appealed to this court from the judgment of the circuit court on the rule in entering up the award as the judgment of that court.

*G. H. Lee* for the appellants.

*C. Boggess* and *C. S. Lewis* for the appellees.

MAXWELL, J. On the 31st day of October, 1863, three suits were pending in the circuit court of Harrison county, between the parties to this appeal. The first was an action of unlawful detainer in the name of *Archibald Boring* vs. *Samuel Boring;* the second was an injunction in the name of the said Archibald vs. the same defendant, and the third was also an injunction in the name of *Samuel J. Boring* vs. *Archibald and Jared Boring.* On the said 31st day of October,

1863, the parties to the above named three causes entered into an agreement in writing, signed and sealed by them, submitting the same to the arbitrament of Ebenezer W. Patton and Hiram J. Lynch, and agreeing that if the said Patton and Lynch could not agree, or desired to have the assistance of an umpire, that they, the said Patton and Lynch, should have the right to select such umpire; and further agreeing that such submission and award should be entered of record in said court, and judgment rendered thereon.

Afterwards, the said Patton and Lynch, together with one Samuel Hoff, returned their award to the said court, which appeared to have been made in pursuance of the submission of the said causes. It appears from the said award that the said Patton and Lynch, desiring the assistance of an umpire before they proceeded to hear the said causes, selected the said Hoff as such umpire; that on the 4th day of January, 1864, the said arbitrators and umpire met together for the purpose of making up their award, but not being able to complete the same on that day or the next, adjourned from day to day until the 6th of the same month when the award was completed. On the return of said award Samuel J. Boring took a rule in each of the chancery causes, to which he was party, against his adversaries, to show cause, if any they could, why the said award should not be entered up as the judgment of the court. The said Archibald, in the chancery suit in which he was complainant, and the said Archibald and Jared, in the cause in which they were de-defendants, took rules against the said Samuel, to show cause, if any he could, why the award should not be set aside. Upon the return of these rules the court refused to set aside the award, but entered the decree, giving it the effect of the judgment of the court, and from this decree an appeal has been allowed to this court.

The 1st, 2d and 3d sections of chap. 154, Code of Virginia, 1860, p. 656, provide for submitting to arbitration, matters in controversy, the effect of such submission, and the manner of entering up an award as the judgment of the court. The 4th section of the same chapter provides how and for

what reasons an award may be set aside, and is as follows: "No such award shall be set aside, except for errors apparent on its face, unless it appear to have been procured by corruption or other undue means, or that there was partiality or misbehavior in the arbitrators or umpire, or any of them. But this section shall not be construed to take away the power of courts of equity over awards."

Upon the hearing of the said rules the said Archibald and Jared moved the court to set aside the said award, "because the said arbitrators, Patton and Lynch, had no authority to call to their aid Samuel Hoff as an umpire; and because there are errors, apparent on the face of said award; and because there was undue means used to procure said award; and because there was misbehavior and partiality in the arbitrators, and each of them; and because the arbitrators acted improperly and without authority in hearing and disposing of said subject matter and making their award at the time they did; and because it was error and misbehavior in the arbitrators to so hear and try said award; and because said award was made at a time when the defendants, nor either of them, in person or by their counsel, or with their witnesses or other evidence, was or could be present; and because the arbitrators exceeded their jurisdiction in directing the payment of money to other persons than to said Jared; and because they state in said award that they heard the evidence of the parties, which in fact is not true; and because the court now here has no jurisdiction to hear and determine the said rule of complainant; and because the arbitrators have by one award disposed of three cases, when in fact, if an award was at all proper, such award should have been in each of said cases."

Of the causes assigned to set aside the award, several of them, if true, would be sufficient, while others of them would not be sufficient, if true. If these "are errors appearing on the face of said award," that is good cause to set it aside. It is insisted in argument here that such errors do exist, and that they are manifestly apparent, if the whole record is looked into. But the rule seems to be well estab-

lished that the errors must be apparent on the face of the award, and that other parts of the record cannot be looked into to show that there is error of law or fact in the award, for the arbitrators are the judges of both law and facts. See *Bassett's adm'r* vs. *Cunningham's adm'r*, 9 Gratt., 688, and the authorities there cited, and *Kline* vs. *Cotard*, 2 Gallison's Reports, 69, and authorities cited.

In the case of *Morris* vs. *Morris*, 9 Gratt., 647, Allen, J., in delivering the opinion of the court uses the following language. "When the submission clearly shows, as I think it does in this case, that the whole matter in controversy and every question of law and fact arising in the cause, was left to the arbitrator, who was substituted to the place of the court, and whose decision was final; and the arbitrator without referring any question to the consideration of the court, makes a general award, deciding the question submitted to him, the award is conclusive. The rule of law and equity requires that the reasons for setting aside an award must appear on the face of it; or there must be misbehavior or corruption in the arbitrators, or some palpable mistake. Though the court on a review of the facts, might arrive at a different conclusion from the arbitrator, it cannot, for this reason, set aside the award. The court can look to the testimony for the purpose of determining from the evidence and other circumstances, whether the error was so gross and palpable as to show misbehavior or corruption in the arbitrator, but not to correct any error of judgment into which, in the view of the court, the arbitrator may have innocently fallen; otherwise most awards, instead of ending, would be themselves the foundation of controversies, and courts would be called upon to exercise an appellate jurisdiction over the proceedings of arbitrators in the country upon proof of what may have transpired before them." This opinion was concurred in at the time it was delivered by the distinguished gentleman, who so ably argued the present cause for the appellants. There is then no error on the face of the award for which it should be set aside.

There is nothing in the case, from which the award appears

to have been procured by corruption or other undue means.

It is claimed that the evidence, taken and certified by the court below, shows that there was partiality or misbehavior on the part of Patton, one of the arbitrators. It will be seen by reference to the facts certified, that Archibald Boring, the party who complains of the conduct of Patton, was himself responsible for that conduct, and if he was injured by it, it was his own fault. But it does not appear from the proof that Patton was guilty of any misbehavior.

It is claimed that the award should be set aside for the want of sufficient notice of the time and place of meeting of the arbitrators. It appears from a notice and return thereon, which accompanied the award when it was returned to court, that the arbitrators and umpire did notify the parties of the time and place, when and where they would proceed to hear the causes submitted to them. It appears also from the award, that notice was given, and that they did proceed on the day, and at the place named, to hear and determine the matters submitted to them, but not having time to finish the cases on that day, continued the hearing thereof until the next day at the same place, on which second day, not having time to complete the hearing of said causes, the further hearing thereof was still further continued until the next day, at the same place, when and where the hearing of the said causes was completed and the award rendered.

It is claimed that further notice should have been given at the adjournment on each day to the parties not in attendance, that the hearing of the causes would be proceeded with on the next day. Our statute in relation to awards is silent as to notice, and I have not been able to find any rule of universal and inflexible application on the subject. There may be many cases referred to arbitrators which require no notice, because the parties are not to be present. But as a general rule, a reasonable notice is necessary, and if the party does not appear when notified, the arbitrators have the power to proceed without him. The arbitrators are the

July Term, J. and A. Boring *vs.* S. J. Boring. 1867.

judges as to whether it is proper to proceed in the absence of the party notified, and they may always do so unless there is some understanding express or implied to the contrary. Upon the whole I think the notice was sufficient in this case.

Under the circumstances of the case there was no misconduct on the part of the arbitrators in their proceeding to render the award in the absence of the counsel of the appellants.

I am of opinion that there is no error in the decree appealed from, and that it ought to be affirmed with damages and costs.

The other Judges concurred.

DECREE AFFIRMED.