# WHEELING.

Fluharty v. Beatty *et al.*

Submitted August 10, 1882—Decided November 24, 1883.

(*Woods, Judge, Absent.)

1. Presumptions are not to be raised for the purpose of overthrowing awards, but the awards are to be liberally construed so as to give effect and operation to the interests of the arbitrators, where it can be done, and every reasonable intendment is to be made in their support. (p. 705 )

*Cause submitted before Judge W. was appointed.

2. The award must be mutual and final; but where it is within the submission, and the arbitrators award a certain sum to be paid by one party to the other without requiring a release to be executed on the payment of the sum, it is mutual and final, because its legal effect is to discharge the party paying the money from all demands within the submission by the party who receives the money. (p. 706.)

3. A court of equity will interfere and set aside an award, whenever such manifest and palpable injustice has been done, as to show fraud, corruption or misconduct in the arbitrators. (p. 706.)

4. The court can look into the testimony which was before the arbitrators for the purpose of determining from such evidence and other circumstances, whether the errors were so gross or palpable as to show fraud, corruption or gross misconduct in the arbitrators. (p. 706.)

5. A court of equity will set aside an award for fraud, collusion, corruption or gross misconduct in the arbitrators. (p. 706.)

6. If the arbitrators unreasonably refuse to hear competent witnesses offered by either party, this is such gross misconduct as to vitiate the award. (706.)

7. A court of equity will not set aside an award on account of the omission of the arbitrators to act upon a matter submitted, unless such omission was to the prejudice of the complainant. (p. 707.)

8. If the arbitration-bond, which contains the submission, was procured by the fraud of one of the parties, this would be sufficient ground to impeach the award, unless the fraud was condoned. (p. 707.)

The opinion of the Court contains the facts of the case.

*James Morrow, Jr.* for appellant.

*W. W. Arnett* for appellee.

JOHNSON, PRESIDENT:

On the 11th day of August, 1874, the plaintiff, William Fluharty, and the defendant, W. D. Beatty, entered into the following agreement:

"Article of agreement made and concluded this 11th day of August, 1874, between William Fluharty of the first and William D. Beatty of the second part, said Beatty agrees to bring a good saw-mill and set it up on the lower end of said Fluharty's home-farm, on or about October next, and buy

said mill as cheap as he can, and sell said Flaharty one half interest in said mill at cost, and take the pay out of the lumber when sold and collected. Said Fluharty is to have the privilege of putting his timber into the mill, to be sawed on the halves, but in the event that said Fluharty does not put in logs to the mill as fast as the mill can saw, then said Beatty is to have the privilege of putting in timber to keep the mill going, for which said Fluharty is to have one fifth of the lumber when sawed, or the money at the same rate. This contract is to run for one year, and at that time if we do not get along agreeable, said Beatty is to set the price on the mill, and Fluharty agrees to buy or sell to said Beatty at the same price."

On the 26th of November, 1874, the said parties made another agreement, stating that a difficulty had arisen between them in reference to said mill, and they thereby annulled the former contract and made annother, by which they set out more plainly the interest and rights of each in the contract. By this contract, Fluharty agreed to "allow Beatty to take from his lands five hundred thousand feet of lumber, inch measure. * * * If Fluharty elected to take his interest in the lumber in money he was to have one fifth of the proceeds of the sale thereof, he to pay one fifth of the expense of removing the lumber to market, or he might take one fifth of the logs in the mill-yard, or one fifth of the lumber in the yard if he elected to take the logs. Beatty was to saw them into any kind of lumber he desired." The said Beatty was permitted to lay a tram-road, and was to put up gates across it, &c. There were a number of other provisions in the contract not necessary to mention.

Two days after this contract, on the 28th day of November, 1883, Fluharty gave to Beatty the following receipt: "Received of William D. Beatty one note of hand signed by Wm. D. Beatty and E. C. Snodgrass calling for seventy-five dollars, dated November 28, 1874, and due six months after date, which said note is in full satisfaction of all matters of dealing between the undersigned and the said William D. Beatty in reference to the portable steam saw-mill now upon the lands of the undersigned; the same to include timber remaining at said mill, and also the labor done by the boys,

team, &c., of the undersigned, up to the commencement of sawing a bill of about fifteen thousand feet for the B. & O. R. R. Co., as named in the article of agreement, this 28th day of November, 1874." The agreement referred to is evidently the agreement executed on the 26th November, 1874, as that agreement refers to the bill of lumber to be sawed for the B. & O. R. R. Co. The parties still did not agree, and on the 29th day of January, 1875, they entered into the following arbitration-bond:

"Know all men by these presents, That we, Wm. Fluharty and William D. Beatty are held and firmly bound unto each other in the just and full sum of one thousand dollars lawful money of the United States, to the payment of which, well and truly to be made to each other, we each of us, bind ourselves, our heirs, executors, administrators and assigns jointly, severally and firmly by these presents. Sealed with our seals and dated this 29th day of January, 1875. The condition of the above obligation is such, that whereas, a difficulty has arisen between the undersigned parties with reference to a contract existing between them, dated the 28th day of November, 1874, with reference to a portable steam saw-mill, engine, boiler, fixtures, &c., that is now upon the lands of William Fluharty, one of the parties to this bond, and also with reference to all the terms of the aforesaid contract in anywise whatever. Now we, the undersigned parties to this bond, hereby agree and bind ourselves under the aforesaid sum of one thousand dollars, each to perform and abide by the award, order, arbitrament, and final determination of Nimrod Morgan, Silas S. Kendall and Eugenius Wilson, arbitrators, chosen and agreed upon by each of the parties to this bond, who are to proceed, after being duly sworn for the purpose, to ascertain and determine and settle between the said parties to this bond any and all matters pertaining to or connected with the contract aforesaid, or in anywise pertaining to the portable steam saw-mill, engine, boiler, fixtures, &c., so far as any civil or *criminal* contract between the parties to this bond are concerned with reference to said mill, &c.; and as a further consideration of this bond, the said Fluharty, party to this bond as aforesaid, is to take the said portable steam saw-mill, engine, boiler, &c., from Wil-

liam D. Beatty, also a party to the bond, and pay to the said William D. Beatty any and all sums that he, the said Beatty, may have heretofore paid on said mill; and also the said Fluharty is to pay the balance unpaid on said mill, either to the said William D. Beatty, or to the party from whom he (Beatty) purchased said mill, at the time, or times when the said purchase-money will be due for said mill; and as a further consideration of this bond the said William Fluharty, party as aforesaid, is to pay the said William D. Beatty (also a party to this bond) whatever sum the said arbitrators may agree upon for the damages, if any, arising under and by virtue of the contract aforesaid, and the said Fluharty is to pay to the said William D. Beatty, whatever sum the said arbitrators, or any two of them, may agree upon for the benefits that may or might arise or accrue to the said William D Beatty, under the contract aforesaid, to be paid at such time or times as the said arbitrators may agree upon. In short the aforesaid arbitrators are to settle and determine, all matters of difference and dispute between the parties to this bond, in anywise appertaining or belonging to the contract aforesaid, or to the mill aforesaid, so far as any civil or criminal matter is concerned between them in reference to said mill, and that the said arbitrators shall make their award in writing, which shall be binding and final upon both the undersigned parties."

The said bond was signed and sealed by each of said parties on the said 29th day of January, 1875, on which day the said arbitrators made the following award:

"JANUARY 29, 1875.

"We, Silas S. Kendall, Eugenius Wilson and Nimrod Morgan, being chosen by William Fluharty and W. D. Beatty as arbitrators to settle all the matters and differences between said parties, after being duly sworn, find the following as our award, to-wit: That the said William Fluharty is to pay Henry Tetrick the balance remaining unpaid on the mill that is now on the farm of said William Fluharty, W. D. Beatty having paid two hundred dollars on said mill; also the said' William Fluharty is to pay W. D. Beatty the sum of seven hundred dollars in the following payments: One half in six months, and the remaining one half in twelve months. The

above award includes settlement of all the work done by William Fluharty's boys, except that done by Henry Fluharty; and the said W. D. Beatty is to have all the lumber that is at the mill, with privilege to haul the same away, and all that has been hauled away, and give immediate possession of the mill to said Fluharty.

"S. S. KENDALL,

"EUGENIUS WILSON,

"NIMROD MORGAN."

The said Fluharty in pursuance of said award executed his notes to said Beatty and took possession of the mill. Beatty assigned the said two notes, one to James H. Furbee and the other to George L. Furbee. The latter sued upon the note assigned to him and recovered judgment thereon, there being no appearance by defendant; and an execution issued upon the judgment. On the 4th day of August, 1876, William Fluharty presented to the judge of the circuit court of Marion county a bill of injunction, and an injunction was by said judge granted on said day restraining the said George L. Furbee from enforcing his said judgment, and also restraining James H. Furbee from proceeding to collect the note so assigned to him. The bill charges, that advantage was taken by Beatty in the execution of the said contract; that deception and fraud were practiced upon him by Beatty in the execution of the contract of the 11th day of August, 1874; that a spike had been driven into a log, in the sawing of which the saw of the mill was broken, and that Beatty charged plaintiff's son, Jesse, with driving said spike, and procured his arrest and indictment therefor and was prosecuting him with bitterness on said charge, and threatening to send him to the penitentiary therefor; and that plaintiff was so weak in body and mind and was so wrought upon, that to save his son he was induced to enter into the contracts of November 26, 1874, and the arbitration-bond of January 29, 1875; that he was so overpowered and intimidated by the threats of said Beatty, that he was induced thereby to sign said contract of November 26, 1874, the arbitration-bond and the said two notes, required by the award; that the whole transaction from the contract of November 26th to the signing of the notes after the award was a scheme of said Beatty to de-

fraud the plaintiff; that the selection of two of the arbitrators was a fraud of said Beatty; that there was misconduct in the arbitrators, in that they permitted Beatty to be present and excluded plaintiff; that the award is not mutual and bears on its face evidence of unfairness and injustice, stating wherein, which it is not necessary here to state, for no such thing appears on the face of the award; that the award is not final, as it says nothing of the criminal proceeding against plaintiff's son Jesse; that the award does not settle the right to any portion of said property, except that which had been before settled by the terms and condition of the arbitration-bond; that the arbitration-bond on its face shows deception and incongruity, which had plaintiff detected in time, he would not have signed it; that while it purports to be an arbitration-bond, it is a contract for the sale of a mill, leaving to the arbitrators the duty only of settling matters appertaining to the contract of November 26, 1874.

The plaintiff filed two amended bills, in the first of which he corrects an error of fact in the orignal bill, and states that one of the notes was assigned to John Blackston instead of Joseph H. Furbee. He also sets up the fact, that Henry Tetrick, who was the man, from whom Beatty had purchased the mill, had obtained judgment by default for eight hundred and seventy-nine dollars against Beatty and the plaintiff, who was his security on two notes given for the purchase-money of said mill; that both of said notes had their origin in the fraudulent claims of said Beatty, as set out in the original bill, and prays an additional injunction, which injunction, on the 5th day of September, 1876, was granted.

The plaintiff filed a second amended bill in which he claimed, that he had been security for Beatty on a two hundred dollar note, which Beatty had executed to J. H. Furbee to raise the money, with which to make the cash-payment to Tetrick on the mill, and that Beatty had executed a deed of trust on four mules to secure plaintiff as such security, and charging that Beatty had reported he had paid the said two hundred dollars to Furbee, and charging Beatty with having sold said mules without paying said debt. It also charges, that Beatty had without his knowledge executed to

a trustee a trust on said mill to secure Tetrick the purchase-money; and that the said mill had been sold under said trust at a great sacrifice; that the mill was fraudulently sold by said Tetrick, was not properly advertised, &c.   The said bill prays, that the plaintiff may be relieved from the payment to said Tetrick of any part of the purchase-money of said mill.

Beatty, Geo. L. Furbee, Henry Tetrick, Trustee Erwin, severally answered the bills, to which they were made defendants; and each denied the material allegations in the bills contained.   Depositions were taken which cover one hundred and eighty-two pages of the printed record.

The cause was heard on the 10th day of May, 1878, on motions to dissolve the injunctions granted on the original and amended bills.   On consideration of the pleadings, exhibits and deposition the court dissolved the said injunctions; and said defendant William Fluharty was granted an appeal from and *supersedeas* to said decree.

The law with regard to setting aside awards by a court of equity seems to be well settled.   In the earlier history of equity-jurisprudence a considerable degree of prejudice existed against the system of adjudicating disputes by voluntary arbitration *in pais*.   The established tribunals manifested jealousy of so irregular a substitute as was presented by a board of arbitration liable often to be composed either in whole or in part of laymen.   It was not to be presumed that justice could be so wisely, as certainly it could not be so harmlessly, administered by such unprofessional tribunals.   This old time hostility has long since disappeared.   Courts are rather glad than otherwise in the present busy age to be relieved of any portion of the burdens of litigation, which without such assistance would be almost unbearable.   Now technical precision and certainty are never demanded.   It is sufficient if the decision be so expressed, that plain men acquainted with the subject-matter can understand it.   (Morse on Arbitration and Award 437.)   Presumptions are not to be raised for the purpose of overthrowing an award; but they are to be liberally construed so as to give effect and operation to the intent of the arbitrators, where it can be done, and every reasonable intendment is to be made in their support.   *Archer* v.

*Williamson*, 2 Har. & Gill 62; *Rixford* v. *Nye*, 20 Vt. 132; *Spear* v. *Hooper*, 22 Pick. 144; *Walker* v. *Merrill*, 13 Me. 173; *Jackson* v. *Ambler*, 14 Johns. 96; *Purdy* v. *Delavan*, 1 Caines 304; *James* v. *Thurston*, 1 Cliff. C. C. 367; *Smith* v. *Smith*, 4 Rand. 95; *Gas Co.* v. *Wheeling*, 8 W. Va. 321; *Richards* v. *Brockenbrough*, 1 Rand. 449; *Armstrong* v. *Armstrong*, 1 Leigh 491.

The award must be mutual and final; but where it is within the submission, and the arbitrators award a certain sum to be paid by one party to the other, without requiring a release to be executed on the payment of the sum, it is mutual and final, because its legal effect is to discharge the party paying the money from all demands against him within the submission by the party receiving the money. *Spofford* v. *Spofford*, 10 N. H. 254; *Purdy* v. *Delavan*, 1 Caines 304; *Karthaus* v. *Ferrer*, 1 Pet. 222; *Cox* v. *Jagger*, 2 Cow. 638; *Howell* v. *McAlexander*, 3 Rand. 94; *Doolittle* v. *Malcom*, 8 Leigh 698.

A court of equity will interfere and set aside an award, whenever such manifest and palpable injustice is done as to show fraud, corruption or misconduct on the part of the arbitrators. *Tracy* v. *Herrick*, 5 Foster (25 N. H.) 381; *Rand* v. *Redington*, 13 N. H. 72. The court can look into the testimony, which was before the arbitrators, for the purpose of determining from such evidence and other circumstances, whether the errors were so gross or palpable as to show fraud, corruption or gross misconduct in the arbitrators. *Morris* v. *Morris*, 9 Gratt. 637; *Boring* v. *Boring*, 2 W. Va. 297. A court of equity will set aside an award for fraud, collusion, corruption or gross misconduct in the arbitrators. *Baker* v. *Crockett*, Hardin 388; *Burusson* v. *Webb*, 4 Porter 65; *Van Cortlandt* v. *Underhill*, 17 Johns. 405; *Mitchell* v. *Harris*, 2 Ves. Jr. 129; *Graham* v. *Pence*, 6 Rand. 529; *Lee* v. *Putillo*, 4 Leigh 436; *Wheatley* v. *Martin*, 6 Leigh 62; *McCormick* v. *Blackford*, 4 Gratt. 133; *Portsmouth* v. *Norfolk Co.* 31 Gratt. 727. If the arbitrators unreasonably refuse to hear competent witnesses offered by either party this is such gross misconduct as to vitiate the award. And if arbitrators receive a paper as evidence without the knowledge or consent of one of the parties to the arbitration, though they say their opinion was formed

before it was received, their award is void. *Jenkins* v. *Liston*, 13 Gratt. 535.   Morse on Arbitration and Award, 536; *Van Cortlandt* v. *Underhill*, 17 John. 405.   A court of equity will not set aside an award on account of the omission of the arbitrators to act upon a matter submitted, unless such omission was to the prejudice of the complainant.   *Davy* v. *Faw*, 7 Cranch 171; *Warfield* v. *Holbrook*, 20 Pick. 531.   If the arbitration-bond, which contains the submission, was procured by the fraud of one of the parties, this would be sufficient ground, on which to impeach the award, unless the fraud was condoned.

It is charged in the bill, that the contract referred to in the arbitration-bond, as well as the bond itself, were procured by fraud and undue means.   This is denied; and the plaintiff wholly fails to sustain the charge.   The bill charges, that the arbitration-bond shows deception and incongruity on its face, as it contains a contract for the sale of the mill.   It is by said bond settled that Fluharty shall take the mill at cost. There is nothing wrong in this.   It is presumed, that Fluharty at that time thought it his interest to take the mill, or he would not have signed the bond; that much was settled.   The bond further shows, that both parties agreed, that Beatty had been damaged, and the arbitrators .chosen by said bond were to ascertain and fix that damage, which they fairly did; and so well satisfied was Fluharty with the award, that he at once complied with its terms, executed the notes required by the award, and took possession of the mill.   Not a single charge of fraud against Beatty or of misconduct or fraud in the arbitration is sustained.   The award possesses all the elements of a valid award; it is mutual and final.

We have examined with care the voluminous depositions taken in the case, which we cannot attempt to review here; and we are compelled to say, that the plaintiff has wholly failed to make a case entitling him to any relief.   Not a single rule of law we have laid down in this cause was violated by the award.

It is insisted that nothing was done by the arbitrators with regard to the "criminal" matter referred to.   This did not injure the plaintiff here; because he was not being prosecuted criminally.   No contract not to prosecute a criminal

charge can be binding.   It would be clearly against public policy.

We find no error in the decree of the circuit court and it is therefore affirmed.

JUDGES GREEN AND SNYDER CONCURRED.

AFFIRMED.