# WHEELING.

TENNANT, ADMINISTRATOR, v. DIVINE.

Submitted June 9, 1884—Decided July 5, 1884.

1. An order of the circuit court setting aside an award made by arbitrators upon a submission *in pais* of matters as to which there is no action pending but which provides that the award shall be made the judgment of the court, is such a final judgment that a writ of error will lie from it to this Court.　(p. 389.)

2. It is not essential to give the court jurisdiction to enter the award as the judgment of the court in such case, that the agreement should declare, in terms, that the submission shall be entered of record.　(p. 390.)

3. Where a statute, which confers either a right or a remedy, is repealed by a subsequent statute that substantially re-enacts the provisions of the repealed statute, so that there is no time when the repealed statute was not the law, the two statutes will be regarded as one continuous law, uninterrupted in its operation. (p. 391.)

4. *Ex parte* affidavits may be read against or in support of objections to the entering of an award as the judgment of the court, especially where they are not objected to in such court, but they should be given much less weight than testimony taken in court or on notice subject to cross-examination　(p. 392.)

5. The parties are bound to present every claim or matter embraced in their submission to arbitrators, unless it is expressly withdrawn before the hearing; and as to any claim or matter thus embraced and not so withdrawn, an award general in its form is conclusive against the party having such claim or matter in any future controversy.　(p. 393.)

6. The arbitrators are not bound to pass upon matters not presented to them, although included in the submission, and the award will not be bad for that cause.　(p. 394.)

7. The opening of the case by arbitrators after the testimony has been closed and the case submitted for further evidence at the instance of one of the parties is primarily a matter in the discretion of the arbitrators and not of strict legal right; and unless they plainly err in the exercise of that discretion and it clearly appears that injustice has been done thereby, the court should not set aside their award for that reason.  (p. 395.)

8. A case in which an order of the circuit court setting aside an award upon *ex parte* affidavits is held to be erroneous, and, therefore, reversed by this Court.

The facts of the case are stated in the opinion of the Court.

*A. F. Haymond* for plaintiff in error.

*James Morrow, jr.*, and *P. H. Keck* for defendant in error.

SNYDER, JUDGE:

Emrod Tennant, as administrator of John Divine, deceased, and Joseph E. Divine entered into a written agreement, dated May 25, 1882, in which after reciting that Tenant as such administrator "claims an account against the said Joseph E. Divine which is unsettled and contested by said Divine," and the parties desiring to have the same amicably adjusted and settled, states that, they, for that purpose, "agree to refer the said account and matters in controversy touching the same, including any accounts the said Divine may have against the estate of said John Divine, to the arbitrament and award of Andrew J. Morris and John E. Price, and a third person to be selected by them, whose award, or an award of a majority of them, shall be final and conclusive on the parties, and they further agree that said award shall be entered up in the circuit court of Monongalia county, West Virginia, as the judgment of said court."

The arbitrators selected S. E. Steward as umpire, and the three made their award, which is dated July 1, 1882. After stating the terms of the submission, as set out in the aforesaid agreement, the award is as follows:

. "After being duly sworn, and having heard the proofs and allegations of the parties, and having examined the matters in controversy by them submitted, we do make this award: •

To the plaintiff, Emrod Tennant, administrator of the estate of John Divine, deceased, the sum of one thousand eight hundred and sixty-three dollars and eighty-four cents, and that each party pay his own costs and the one-half of the arbitrators' fees."

On October 12, 1882, the plaintiff, Tennant, filed the award in the clerk's office of the circuit court of Monongalia county, and upon his motion the said court on October 23, 1882, issued a summons or rule against the defendant, Divine, to show cause on the first day of the next term why said award should not be entered as the judgment of the court. The rule having been duly served on the defendant, he, on February 26, 1883, appeared thereto and moved the court to dismiss the proceeding on the ground that the agreement of submission did not give the court jurisdiction to proceed by rule to have the award entered as the judgment of the court, which motion the court overruled, and thereupon the defendant filed his answer with certain exhibits and affidavits in support of the facts therein alleged, and then moved the court to discharge the rule and set aside the award. In opposition thereto and to sustain the award the plaintiff filed his own and the affidavits of the umpire and one of the arbitrators, the other arbitrator being then out of the county. Upon consideration of said answer, exhibits and affidavits the court sustained the defendant's motion, set aside the award and discharged the rule with costs to the defendant. From this judgment the plaintiff obtained a writ of error to this Court.

There are several preliminary questions raised in this Court which should be first considered and disposed of before passing upon the merits of the case.

It is claimed by the defendant in error that this Court has no jurisdiction, because the order setting aside the award is not a final judgment from which a writ of error will lie. In support of this position *Manlove* v. *Thrift*, 5 Munf. 493, is relied on. This case was founded on an order of reference to arbitrators made in a *pending action* and not upon an agreement of the parties *in pais* as was the case now before us. That case is not, therefore, analogous. When an award, made in a pending case, is set aside, the action still remains

in court for further proceedings, and a final judgment may be had therein without a new action. But where the submission is *in pais*, upon an agreement of the parties that the award shall be made the judgment of the court, if the court sets aside the award, nothing remains in court and no further proceedings can be had therein without resorting to a new action either on the original cause of action or the agreement for submission. The judgment of the court setting aside the award and discharging the rule in such case is final so far as that particular proceeding is concerned. I am, therefore, of opinion that the order complained of in this case is such a final judgment as entitles the plaintiff to a writ of error to this Court.

It is also insisted by the defendant in error that the rule ought to have been discharged, because the agreement did not expressly provide that the *submission* should be entered of record. This objection I think is hypercritical. The agreement does provide that the award shall be entered as the judgment of the court; and as the authority to do a particular thing necessarily implies the means to do it, it therefore seems to me that, if the entering of the submission of record is an essential perquisite to making the award the judgment of the court, the agreement to do the latter implies the authority to do the former. I have examined a number of cases in the reports of Virginia and this State and find that in nearly all of them the agreement was almost identical in this respect with the agreement here. In none of these cases was any objection raised to the form of the agreement because it did not provide for entering the submission of record. *Bassett* v. *Cunningham*, 9 Gratt. 684; *City of Portsmouth* v. *Norfolk*, 31 Gratt. 727; *Henley* v. *Menefee*, 10 W. Va. 771.

The agreement to submit in this case is dated May 25, 1882; on March 2, 1882, an act of the Legislature was passed which took effect June 2, 1882, amending and re-enacting chapter 108 of the Code, and all proceedings subsequent to the making of said agreement were had after said act took effect. In view of these facts it is claimed by the defendant in error that the agreement thus made before the act of March 2, 1882, took effect, did not authorize the proceedings

had after said act took effect, that said act by repealing the provisions of the Code vacated the power of the arbitrators and the jurisdiction of the court to enforce the agreement or any award made in pursuance of it. I do not think this proposition can be maintained. The parties by entering into the agreement made the law then in force, and with reference to which it was made a part of their agreement and they thereby acquired a vested right to the remedies then in force, or others equivalent thereto, to have said agreement enforced which could not be destroyed by a subsequent repeal of the statute. *Forqueran* v. *Donnally*, 7 W. Va. 114. Moreover, it is well settled, that where a statute which confers either a right or a remedy is repealed by a subsequent statute which substantially re-enacts the provisions of the repealed statute, so that there is no moment of time when the repealed statute was not the law, the two statutes will be regarded as one continuous law, uninterrupted in its operation. *Curran* v. *Owens*, 15 W. Va. 208.

It is claimed, however, that section 5 of said act of March 2, 1882, is materially different from the corresponding section of chapter 108 of Code for which it was substituted. The addition made to said section by said act provides, that a fiduciary may file his petition asking the permission of the court to submit to arbitration any suit or matter of controversy touching the estate or property controlled by him as such fiduciary, and that if such petition is filed in good faith, such fiduciary shall not be liable for any loss sustained by an adverse award where there was no fault or neglect on his part. By the common law a fiduciary as such might submit to arbitration and the trust represented by him was bound thereby—3 Leonard 53. But if injustice should be done the trust-estate by such submission, the fiduciary was held responsible as for a *devastavit*— *Wheatley* v. *Martin*, 6 Leigh 62; *Nelson* v. *Cornwell*, 11 Gratt. 724. It is evident, therefore, the provision in question, as it was in the Code and as it now stands in said act of 1882, was intended merely to protect the fiduciary from liability when he complied with the directions of the statute; but it was not intended to affect the validity of an award made without such compliance. The change then made in said section is entirely

immaterial as affecting the legality of the award or the rights
of the defendant in error who is not a fiduciary, and he can
not be heard to complain of any omission by the plaintiff in
which he has no concern.

This brings us to the merits of the case. It is assigned by
the plaintiff in error that the circuit court erred in setting
aside the award. This assignment involves the whole merits
of this writ of error, and is predicated upon the insufficiency
of the grounds alleged against the award and on which it
was set aside. The record plainly shows that there was no
evidence before the circuit court other than the submission
and award except *ex parte* affidavits filed by each party.
These affidavits were excepted to on the ground that they
were taken without notice, but the exceptions are not
referred to in the order of the court, and, therefore, this
Court must presume they were waived by the parties. But,
being objected to here for incompetency, if they are incom-
petent, that objection must prevail, although not taken in the
trial-court—*Rose* v. *Brown*, 11 W. Va. 122.

The practice in the *nisi prius* courts of Virginia and this
State, seems to be to permit such affidavits to be read in
opposition to and in support of awards in cases at law, and
this practice appears to be fully recognized by the appellate
court of Virginia—*Pleasants* v. *Ross*, 1 Wash. 156; 2 Tuck.
Com. 39; *Adams* v. *Hubbard*, 25 Gratt. 129. I can find no
case in which the right to read such affidavits has been raised
by counsel or considered or questioned by the court. Upon
principle this practice could not be sustained if this were a
direct proceeding to determine an issue of fact between the
parties. But as it involves merely collateral questions and
not matters directly in controversy, it comes within the rule
governing the determination of the admissibility of evidence
by the court on trials before a jury. In such cases the court
is very often called on to determine questions of fact as col-
lateral to the issues before the jury. Whether or not certain
evidence is admissible often depends up the citablishment of
other facts and whether such other facts have or have not
been established must be determined alone by the court
before the evidence can be received or rejected. In such
cases the collateral evidence is alone for the consideration of

the court and it must necessarily have a large discretion as to the kind of evidence it will receive. Such affidavits are certainly not the best means of attaining the truth, but that they are admissible as competent evidence in cases of this kind cannot at this late day be questioned, especially if they are not objected to in the court below. However, while holding that *ex parte* affidavits read in the court without objection will not be disregarded by this Court, still they will be given much less weight than testimony taken in court or on notice and subject to cross-examination—*Adams* v. *Hubbard, supra.*

A number of objections are made to the award in the defendant's answer, which is in form an affidavit of the defendant. It does not appear from the record on what ground the court below set aside the award. There are no errors apparent upon the face of the award, and none such are alleged by the defendant. The objections will now be noticed in the order they appear in the defendant's answer.

1. The first objection is that the award does not settle all the matters submitted to the arbitrators. It seems that the defendant and his father, the plaintiff's testator, had purchased, jointly, what is styled the "Gump Farm," and that a part of the purchase-money therefor remaining unpaid a suit was brought by a third party to subject this farm to the payment of the same. The plaintiff, in his answer filed in said suit, insisted that his testator had paid of the purchase-money for said farm more than his equal share, and that the defendant and his interest in the farm were liable for the whole of said unpaid part. This suit was pending when the agreement to arbitrate was made, and the defendant asserts that this matter was embraced in said agreement, but that by reason of the partiality of some of the arbitrators, it was not considered or embraced in the award.

It is doubtful whether the terms of the submission included this controversy. This matter being a claim against and not in favor of the defendant he can not be prejudiced whether it was or was not settled by the award. If it was not included in the submission, it was properly excluded from consideration by the arbitrators; and if, on the other hand, it was covered by the submission, then, the award being gen-

eral, it must be conclusively presumed that it was considered and settled by the award, and the plaintiff will be concluded thereby and can never again allege it against the defendant. The presumption is that any claim which the claimant was bound to present, was in fact presented and adjudicated by the arbitrators, and the parties are bound to present every claim or matter embraced in the submission.—Morse on Arb't and Award 79.

A court of equity, much less a court of law, will not set aside an award on account of the omission of the arbitrators to act upon a matter submitted unless such omission was to the prejudice of the complainant—*Fluharty* v. *Beatty*, 22 W. Va. 699.

But if the law were otherwise, it is fully proven in this case that the matters involved in said suit were by agreement of the parties withdrawn from the consideration of the arbitrators and neither party offered any evidence in reference thereto. The arbitrators are not bound to pass upon matters not presented to them although included in the submission. And the parties may at any time before the award has been made withdraw from the consideration of the arbitrators any portion of the matters submitted, and neither party can question the award because such matters were not included— Morse on Arb. and Award 343.

2. The defendant alleges that it was agreed and fully understood by both parties that no matter or demand should be brought forward on either side that was barred by the statute of limitations and that all matters so barred should be excluded by the arbitrators, but that in disregard of this agreement and contrary to law and equity the statute of limitations was allowed its full operation against the defendant, but was not permitted to operate in his favor in the judgment and award of the arbitrators.

The plaintiff admits the agreement in regard to the bar of the statute of limitations as alleged by the defendant, but he denies that said agreement was disregarded and proves by the umpire and one of the arbitrators, the other not testifying, that said agreement was faithfully carried out to the best of their judgment. If the defendant was denied the benefit of the bar of the statute as to any account or item presented

against him, it was certainly not because the arbitrators
refused him the benefit of said agreement or the plea of said
statute, but because they may have erroneously found the law
or the fact that such bar existed. No facts are given to show
whether in fact such error was committed or not, and in the
absence of any proof to the contrary the mere assertion of
the defendant that it occurred will not avail and was not suf-
ficient ground for the court below to set aside the award.
Unless otherwise provided by the submission the arbitrators
are the final judges, not only of all matters of fact but also of
all questions of law which arise in the course of the proceed-
ings before them or which are involved in the decision of the
subject of submission—*Bassett* v. *Cunningham*, 9 Gratt. 684,
688; *Boring* v. *Boring*, 2 W. Va. 297.

The court may look to the testimony for the purpose of
determining whether the error complained of was so gross
and palpable as to show misbehavior or corruption in the
arbitrators, but not to correct any error of judgment into
which, in the view of the court, the arbitrators may have
innocently fallen. Otherwise most awards, instead of end-
ing, would be themselves the foundation of controversies,
and courts would be called upon to exercise appellate juris-
diction over the proceedings of arbitrators in the country
upon proof of what transpired before them—*Morris* v. *Morris*,
9 Gratt. 637, 647.

3. The next objection is that the arbitrators refused to hear
certain witnessess which the defendant proposed to them.
In regard to this objection it is clearly shown, that nearly
three months after the arbitrators had heard all the evidence
of each party and the case had been argued and submitted
to them for decision, and after the award had been agreed
on except as to one small item which they subsequently de-
cided in favor of the defendant, and no doubt after the
defendant had ascertained the character of the award, the
defendant gave notice to the plaintiff and in pursuance thereof
asked the arbitrators to re-open the case for the purpose of
re-hearing the testimony of one Shriver to enable him to
correct or rather to contradict his former testimony, also to
re-hear the testimony of John Divine and to hear the
evidence of one Fletcher, who lived in the neighborhood.

The object of this evidence was to establish the defence of the statute of limitations as to a part of the plaintiff's claim against the defendant, which had been attempted on the hearing in the first instance. The admission of further evidence after the case has been closed on both sides is primarily in the discretion of the arbitrators and if they do not think proper to allow it, there can be no review except in a plain case. The receiving of such proof is not a matter of strict legal right on the part of the party offering it— *Williams* v. *Hayes*, 20 N. Y. 58; Morse on Arb. and Award 145.

The evidence in this case was not offered until nearly three months after the case had been closed and submitted by both parties to the arbitrators for their final decision and not until long after the case had been considered and the award substantially agreed upon by the arbitrators. The evidence was not offered in rebuttal of the evidence of the plaintiff but to corroborate the evidence of the defendant previously offered and to permit one of his witnesses to contradict his former testimony. To allow this practice either before arbitrators or in court would be to encourage negligence and prolong litigation. Sometimes a court will, after the case is closed, allow a witness to be re-called or hear new evidence to obviate some formal objection or rebut matters offered by the opposite side, but it is very seldom that it will do so to allow a party to supplement his case on the merits. There must be an end of litigation and there must also be an end to the trial and proceedings in each particular case. There is nothing in the facts or circumstances alleged by the defendant here to entitle him to any peculiar favor in this matter. He does not show any sufficient reason for the delay in having the evidence now offered before the arbitrators. The fact he offers to prove, if it is such, was one within his own personal knowledge and he did in fact offer evidence in support of his pretension, but having discovered, no doubt, that his former evidence was not sufficient to satisfy the arbitrators, he undertook to make a stronger case after he obtained knowledge of an adverse decision. If he did not have such knowledge it is difficult to understand what, after resting satisfied so long, so much excited his vigilance. The object of this re-hearing is alleged to be for the purpose of allowing the defendant to

make out the plea of the statute of limitations to a considerable part of the plaintiff's claim. While courts are always willing and do give full effect to such a defence when properly brought before them, still as it is often an unconscienable and inequitable defence, they are not disposed to offer facilities to make it available. It is at most but a technical legal advantage which the defendant acquires by the delay and negligence of the plaintiff and, therefore, when the defendant loses the benefit of this technical advantage by his negligence or default they will not aid him to recover it. I, therefore, do not think the arbitrators erred in refusing to open the case to re-hear the testimony offered the defendant—*Adams* v. *Hubbard*, 25 Gratt. 129.

4. The defendant in the next place alleges that the plaintiff induced one of his witnesses to stay away from the trial before the arbitrators. This is positively denied by the plaintiff and besides it appears that this witness was a tenant of the defendant and that no objection was made to closing the case before the arbitrators without hearing him. There was nothing in this objection.

5. It is, also, alleged by the defendant that on the second day after the arbitrators met to hear the case a number of witnesses were examined on behalf of the plaintiff and the defendant desired to bring other witnesses not then in attendance and asked time for that purpose, but that the plaintiff took one of the arbitrators aside and after a private conversation with him, the said arbitrator returned and at once announced that no witnesses would be heard unless produced on that day, to which one of the other arbitrators assented. This charge is positively denied by the plaintiff and it is affirmatively shown by the arbitrators that the case was continued over until the day after the one specified by the defendant, and the case was then argued by the parties and closed without objection on the part of either party. This is not controverted or denied by the defendant. In fact he does not state that he did not examine all the witnesses he desired before the case was closed at the final hearing. This charge is rendered very improbable by the subsequent conduct of the defendant; for three months after this he asked the arbitrators to re-open the case. If this

alleged partiality had been shown and he had been then denied the right to produce his witnesses, it is very singular that he would nearly three months afterwards make the unreasonable request to have the case re-opened for the very purpose of having witnesses heard, which had been refused on that occasion.

6. The last objection is that that the paper filed as the award was signed by the arbitrators when the amount awarded in favor of the plaintiff was left blank and that said blank was afterwards filled up in the absence of one of the arbitrators and returned to the clerk of the court without his knowledge.

In reference this objection the two arbitrators who filed their affidavits, state that, after all the evidence had been closed and the case submitted to them, they met and made their decision upon all the matters submitted except an item of eighty dollars, as to which the arbitrators differed and the umpire was not then prepared to decide with which of the arbitrators he would agree; that they then drew up the award and all signed it, leaving the sum blank with directions to one of the arbitrators, with whom the award was left, to fill the blank with the amount then agreed upon after adding or deducting the said eighty dollars, accordingly as the umpire should agree with the one or the other of the arbitrators; that the umpire subsequently decided that the said eighty dollars should be disallowed against the defendant; that the blank was then filled by one of the arbitrators with the proper amount found due the plaintiff, and filed by him with the clerk by direction of the other arbitrator and the umpire.

The authority delegated to the arbitrator, who held the award, to fill the blank, was ministerial and not judicial, and, therefore, when the blank was subsequently filled according to their direction it was the award of all the arbitrators. It was their decision, and not simply the decision of the one who filled the blank. The amount thus inserted was the sum agreed on by one arbitrator and the umpire, the other arbitrator dissenting. By the terms of the submission, this being the award of a majority, it was valid and binding on the parties. But it is not pretended that the award was not

assented to by the umpire and one of the arbitrators after the blank had been in fact filled up. The dissent of the other, if the award had been exhibited to him, could not have affected its conclusion or validity. But when filled up by the direction of all with a sum which they had agreed should be their award, it became and was in fact their award and was as valid as if it had been filled up at the time said agreement was made and in the presence of all of them.—*Byars v. Thompson*, 12 Leigh 550.

Having thus considered all the objections made by the defendant in error to the award, and being clearly of opinion that said objections considered separately or as a whole are plainly insufficient to impeach or invalidate the award, my conclusion is that the circuit court erred in setting it aside. The order of said court must, therefore, be reversed with costs and a judgment entered for the plaintiff on the award by this Court with costs in the court below, which is ordered accordingly.

REVERSED.